(Decided 27th June, 1878.)

JOSHUA HORNER *vs.* STATE OF MARYLAND.

*Public Nuisance— What constitutes the Public to be offended by a Nuisance—Meaning of the words "Roads and Streets" in an Indictment for a Nuisance in carrying on an offensive trade—Sufficiency of the Allegations in such Indictment.*

Joshua Horner, Jr., was indicted in the Circuit Court for Baltimore County for maintaining a nuisance, in carrying on an offensive trade. The indictment charged that said Horner "near unto divers roads and streets, and also near unto the dwelling houses of divers liege inhabitants of the State, there situate and being, unlawfully and injuriously did use, and yet doth continue to use, a certain furnace and boiler," for certain specified purposes in carrying on the said offensive trade. A demurrer to the indictment, and a motion in arrest of judgment, were successively overruled; and after judgment entered upon the verdict of guilty the case was brought before this Court as upon writ of error, the traverser alleging that the indictment was fatally defective, 1st, because it did not aver that the furnace and boiler used in so carrying on the said offensive trade were located near a *public*

Horner *vs.* State.

road or highway, or at any place where the public had any right or interest; 2nd, that what was charged amounted to nothing more than a private nuisance for which an indictment would not lie. HELD:

1st. That in determining what constitutes the public to be offended by a nuisance, and what degree of annoyance will subject the party causing it to public prosecution, reference must always be had to the local situation of the nuisance complained of; and where the trade or business producing the alleged nuisance is in itself lawful, before it can be declared a nuisance it must be shown to be in such proximity to public ways, or other places of public resort, as to be offensive to those passing, or resorting to, such places, or that it seriously incommodes the people generally in the neighborhood where the trade is carried on.

2nd. That the ordinary and accepted meaning of the words "roads and streets" was "ways for public travel," unless qualified by the adjective *private*, or some other qualifying expression.

3rd. That the allegation that the nuisance existed "near unto divers roads and streets, and also near unto the dwelling houses of *divers* inhabitants of the State, there situate and being," was sufficient.

APPEAL as upon writ of error, from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and ROBINSON, J., and was submitted on brief by the Attorney-General.

*Richard J. Gittings* and *I. Nevett Steele,* for the plaintiff in error.

The facts set forth in the indictment do not necessarily constitute a *public* nuisance. The acts complained of not being in themselves unlawful, become so only by reason of special circumstances. These circumstances must be set out in the body of the indictment. The circumstance here relied on, is the locality where the business was carried on. The law, as we contend, is, if the acts com-

plained of affect only the rights of an individual, or of a definite number of individuals, it is a *private* nuisance; and the several persons actually injured have their remedy by private action. To make the act indictable, it must injuriously affect some public right—some right in which the public, in their aggregate capacity, have a common interest, as distinguished from a mere individual or private right. 4 *Black. Com.,* 5; 1 *Bishop's Cr. Law, sec.* 348; 1 *Bennett & Heard's Leading Cr. Cases,* 9; *Kearney vs. State,* 48 *Md.,* 16.

The locality of the alleged nuisance which, from the nature of the case, is the gist of the offence, is described in the indictment as "near unto *divers roads and streets,* and also near unto the dwelling houses of *divers* liege inhabitants of the State of Maryland, there situate and being."

It is not averred that the roads and streets were *public* ways or highways, or that the public had any right to use them. They may have been private ways which the public had no right to use. In that case, no indictment would lie. *Wharton's Cr. Law,* (7th *Edition,*) secs. 2363, 2379, 2414; *Rex vs. Lloyd,* 4 *Esp.,* 200; *Com. vs. Webb,* 6 *Randolph,* 726; *State vs. Baldwin,* 1 *Dev. & Batt.,* (*N. C.,*) 195.

The fact that it was near unto the dwelling houses of "divers liege inhabitants" is insufficient. The averment of "divers" would be gratified by proof of *two* or *three* dwelling houses. This would not constitute a public nuisance *Rex vs. Lloyd,* 4 *Esp.,* 200.

There is no averment even that the place was in a populous neighborhood.

The charge is not that the traverser erected the furnace and boiler complained of, but that he "continued to use a furnace and boiler, &c., &c., before that time made, *erected and set up by certain persons to the jurors unknown."* For aught that appears, the thing complained of as a nuis-

ance, may have been erected before the roads were made, or the houses near it were built, or may have been there over twenty years. 1 *Russell on Crimes*, 320 ; *Rex vs. Cross*, 2 *C. & P.*, 483, (12 *E. C. L.*, 226 ;) *Ellis vs. State*, 7 *Blackford*, 534.

The conclusion of the indictment " to the common nuisance of all the liege inhabitants," &c., though necessary, does not supply the defect in the body of the indictment. 2 *Bishop on Cr. Procedure*, sec. 812 ; *Com. vs. Smith*, 6 *Cushing*, 80.

The precedents found in the books on criminal pleading confirm this view. See a large collection of precedents in *Chitty's Criminal Law*, under the caption " Indictments for Nuisances near to Highways." 3 *Chitty's Cr. Law*, 642–657.

*Bernard Carter* and *Charles J. M. Gwinn*, *Attorney-General*, for the State.

The indictment unquestionably alleged that the furnace and boiler complained of were located near unto divers roads and streets in Baltimore County, and also near unto the dwelling houses of divers inhabitants of this State, there situate and being.

The Acts of 1870, ch. 99, 1872, ch. 78, and 1874, ch. 441, establish the right of the County Commissioners of Baltimore County, to lay out streets in Baltimore County.

Under our Code of Public General Laws, two species of roads are provided for. Article 28, secs. 12–28, secs. 29–46. In the text of the sections 12–28, public roads are designated only as " roads." In the text of the sections 29–46, private roads are designated as " private roads." Where the word " road " is used, under our system of laws, a public road, or highway, is, therefore, meant.

In *Regina vs. Saintiff*, 6 *Mod.*, 255, HOLT, C. J., said that the word " highway " was the *genus* of all public ways for carts, horsemen and footmen. A common street,

therefore, is a public highway.  *City of Cincinnati vs. White*, 6 *Peters*, 438 ;  *Angell on Highways*, Ed. 1857, secs. 24, 25 ;  2 *Dillon on Municipal Corporations*, 2nd Ed., sec. 538 ;  *Common Council vs. Croas*, 7 *Indiana*, 12 ;  *State vs. Mathis*, 21 *Ind.*, 278 ;  *State vs. Duncan*, 1 *McCord*, 404.   As a street is a highway, the first objection stated in the petition of the traverser falls to the ground.   But it is submitted that the use of the word " road," without designating such road as a " public road," was sufficient. It has been seen that, under our Code of Laws, the word " road " imports a " public road."   In the statute law of the State of New York, the word " road " is used in the same large sense.   *Fowler vs. Lansing*, 9 *Johns.*, 349 ; *Griffin vs. Martins*, 7 *Barb.*, N. Y., 297.   The same meaning is applied to the word " road " under the laws of Pennsylvania.   *Respublica vs. Arnold*, 3 *Yeates*, (Pa.,) 421.   The cases of *Morgan vs. Palmer*, 48 *N. H.*, 336, and *Craig vs. The People*, 47 *Ills.*, 493, further establish the correctness of this construction.

The averment in the indictment that the furnace and boiler complained of, were located near divers roads and streets, was sufficient ; for these are highways in which the public has a right and interest.   *Lansing vs. Smith*, 8 *Cowen*, 152 ;  *Regina vs. Holmes*, *Dearsly's C. C.*, 207 ;  *Stephens' Digest Crim. Law*, Art. 188 ;  1 *Hawk. P. C.*, Book 1, *ch.* 32, *sec.* 5, *p.* 693.

To show that anything is a public nuisance, and so the subject of an indictment, it is enough to show either .that it seriously affects the health of the neighborhood, or that it renders the enjoyment of *life* and *property* uncomfortable ;  and though whether it is a *public* nuisance, as contradistinguished from a private nuisance, depends on the number of houses and concourse of people, yet, whether the requisite number are affected, is a question of fact for the jury, to be judged of by them.   *Rex vs. White & Ward*, 1 *Burrows*, 337 ;  *King vs. Davey*, 5 *Esp.*, 217 ;

*Archibald Cr. Pl.*, 891; *Rex vs. Pappineau*, 2 *Strange*, 686.

We have seen that it is the influence, either on the health of the neighborhood, or its influence on the enjoyment of life and property, which determines the question of nuisance. It may very well be that a large number of houses may be rendered untenantable on account of the proximity of a noxious factory, which houses may be in a settlement near to which no highway or *public* road leads. And so we find, that though, as a general thing, the draftsmen of indictments for nuisances include the allegation that the source of it is near to a highway, in addition to the allegation that it is near to the dwelling houses of divers of the inhabitants there residing, yet this is not always so. *King vs. Davey*, 5 *Esp.*, 217 ; *Prescott's Case*, 2 *City Hall Recorder*, 161; *Com. vs. Ashbrook*, 1 *Bush*, (*Ky.*,) 139 ; *Hackney vs. State*, 8 *Indiana*, 495 ; *Rex vs. Cross*, 2 *Car. & P.*, 483 ; *Rex vs. Neil*, 2 *Car. & P.*, 485 ; *Wood's Law of Nuisance*, 27, 30, 83; *Comm. vs. Upton*, 6 *Gray*, 473.

We have seen (*Rex vs. White & Ward*, 1 *Burr.*, 337, and *Rex vs. Pappineau*, 2 *Strange*, 686,) that whether the neighborhood is sufficiently populous to make the nuisance a public one, as contradistinguished from a *private* one, is a question of *fact* for the jury, and not a question of pleading upon the indictment. 1 *Russell on Cr.*, 319 ; *Roscoe Cr. Ev.*, 791.

It is not at all necessary to allege that the neighborhood is a *populous* one, as seems to be supposed by the appellant judging from the reasons assigned in his petition for the writ of error. Nor will any form of indictment, as given in the leading text books, be found to contain any such averment. The language used in this indictment to aver that this furnace and boiler were a nuisance, because of their proximity to, and effect upon the persons *dwelling* in the neighborhood, has been directly judged

to be sufficient. The language is, " near unto the dwelling houses of *divers* liege inhabitants of the State of Maryland, there situate and being." See *Form, Arch. Cr. Pl.*, 889, 890. This also given in 2 *Bishop's Cr. Procedure, sec.* 820. The words "*divers inhabitants*" are sufficient. 2 *Bishop's Cr. Prac.*, 863 ; *Rex vs. White & Ward*, 1 *Burrows*, 337.

ALVEY, J , delivered the opinion of the Court.

The indictment in this case charges the defendant with maintaining a nuisance, in carrying on an offensive trade. The defendant demurred to the indictment, and the demurrer was overruled; and, upon plea of not guilty, the defendant was tried, and found guilty by verdict of a jury. He then made a motion in arrest of judgment, and that was overruled ; and after judgment entered upon the verdict, the cause was brought here as upon writ of error, and the errors assigned are certain alleged defects in the indictment.

It is charged in the indictment that the defendant, "near unto divers roads and streets, and also near unto the dwelling-houses of *divers* liege inhabitants of the State, there situate and being, unlawfully and injuriously did use, and yet doth continue to use, a certain furnace and boiler, for the purpose of boiling the skins, hoofs, tripe, entrails and offal of beasts, before that time, &c., and unlawfully and injuriously did boil, &c., divers large quantities of skins, hoofs, tripe, and other parts and offal of beasts, by reason of which said premises, divers noisome, offensive and unwholesome smokes, smells and stenches, during the time, &c., were from thence emitted and issued, so that the air then and there was, and yet is greatly filled and impregnated with the said smokes, smells and stenches, and was, and is rendered, and become, and was and is corrupted, offensive, uncomfortable, and unwholesome, to the great damage and common nuisance of all the liege inhabitants of the State, there inhabiting,

being and residing, and going and returning, and passing through the roads and highways.''

The objection taken to this indictment is, that it does not aver that the furnace and boiler were located near a *public* road or highway, or at any place where the public have any right or interest, and consequently, what is charged amounts to nothing more than a private nuisance, for which no indictment lies. And whether the indictment does sufficiently charge a public offence is the sole question in the case.

And before stating what constitutes the elements of the offence, it may be proper to state, that, as a general proposition, every indictment must charge the crime of which the party is accused with such certainty and precision that it may be understood without the resort to intendments, and that all the elements to constitute the offence must be averred. This is important not only as means of notice to the accused, but as means of identification of the particular accusation, with a view to future protection against a second prosecution for the same offence.

This being the general rule in framing the indictment, let us see of what the crime consists, for which the defendant is indicted.

And it will be found, upon examination of the authorities, that there has been considerable difficulty experienced, in cases like the present, in determining what constitutes the public to be offended by the nuisance, and what degree of annoyance will subject the party causing it to public prosecution. In determining these questions, reference must always be had to the local situation of the nuisance complained of; and where the trade or business producing the alleged nuisance is in itself lawful, before it can be declared a nuisance, it must be shown to be in such proximity to public ways, or other places of public resort, as to be offensive to those passing or resorting to such places, or that it seriously incommodes the people generally in the

neighborhood, or community where the trade is carried on. If, therefore, a party carry on an offensive trade or manufacture in a settled neighborhood, or near places of usual public resort or travel, whether the offence be to the sight, smell or hearing, it constitutes a nuisance, and subjects the party producing it to indictment and prosecution. And in conformity to this general doctrine we find the law laid down by *Hawkins*, in his *Pleas of the Crown, vol.* 1, *Bk.* 1, *ch.* 32, *sec.* 10, where it is stated that a brew-house, erected in such an inconvenient place, wherein the business cannot be carried on without greatly *incommoding the neighborhood*, may be indicted as a common nuisance ; and so in the like case may a glass-house or swine-yard. So, in the case of *Rex vs. Smith*, 2 *Str.*, 704, where the defendant was indicted for making great noises in the night with a speaking-trumpet, to the disturbance of the neighborhood, it was held to be a nuisance, and the party was convicted and fined. So, again, in *Rex vs. Pappineau*, 2 *Str.*, 686, an indictment charging a nuisance to consist in working a mill for steeping sheep-skins in water, near a highway, and also near several dwelling-houses, whereby the air was corrupted, was held to be sufficient. And in the case of *Rex vs. White & Ward*, 1 *Burr.*, 333, buildings for making acid spirit of sulphur, whereby the air was impregnated with noisome and offensive stenches, near the King's highway, and near several dwelling-houses, were declared to be a nuisance ; and it was also held, that it is not necessary that the smell should be unwholesome ; it is enough if it renders the enjoyment of life and property uncomfortable. These cases have never been overruled, nor even questioned, so far as we have been able to discover ; and the doctrine maintained by them would seem to be founded both in principle and reason.

In this case the specific objection urged to the indictment is, that it does not charge the offence as having been committed against the public ; that charging the source

of the nuisance to exist "near unto divers roads and streets, and also near unto the dwelling-houses of *divers* inhabitants of the State there situate and being," is not sufficient, according to the argument for the defendant, to bring the case within the definition of a common nuisance. But in this we cannot agree with the counsel for the defendant.

As we have seen, it is sufficient to lay the nuisance to that portion of the general public that may pass and repass on the public highways, or to that portion of the public that may resort to any other public place to which any considerable number of people are in the habit of resorting. *Wood, L. Nuis., p. 30, sec. 20.* This we do not understand to be controverted by the defendant. But it is insisted that the terms *roads and streets,* used in the indictment, should not be taken as descriptive of public roads and streets, but should be taken to mean private roads and streets, inasmuch as the statute law of the State recognizes and provides for opening private ways. Such construction, however, we do not feel justified in adopting. The noun "road," according to legal definition, means a passage through the country for the use of the people. 2 *Bouv. L. Dic.,* 488. The ordinary and accepted meaning of the term is a way for public travel, unless qualified by the adjective "private," or some other qualifying expression. *Respublica vs. Arnold,* 3 *Yeates,* 421. And so as to the noun "street." That term is defined to mean a public thoroughfare or highway in a city or village. 2 *Bouv. L. Dic.,* 549, 551; 4 *Sergt. & R.,* 106. Taking then these terms as meaning public ways or thoroughfares, the nuisance is sufficiently charged, according to all authority and precedent.

But it is also charged that the nuisance complained of is " near unto the dwelling-houses of *divers* inhabitants of the State, there situate and being ;" and at the conclusion of the indictment the nuisance is alleged to be "to the

great damage and common nuisance of all the liege inhabitants of the State, there inhabiting, being and residing, and going and returning, and passing through the roads and highways." It is true, this latter or concluding allegation, will not supply any defects in the preceding parts of the indictment. There must be sufficient facts charged in the body of the indictment to justify the conclusion. *Whart. Cr. L.*, sec. 2362; 2 *Bish. Cr. Pro., sec.* 812; *Mains vs. State*, 42 *Ind.*, 327. But the allegation that the nuisance existed near the dwelling-houses of *divers* inhabitants of the State there being, would seem to be sufficient. In the case of *Rex vs. Crunden*, 2 *Camp.*, 89, where the defendant was indicted for exposing himself naked while bathing on the sea-beach, the indictment contained two counts, as we find it in 2 *Chitty Cr. L.*, 41; the first charging that the defendant exposed himself naked near to and in front of *divers* houses, and also near to a certain highway, and in the presence of *divers* persons; and the second charging only that he exposed himself naked to *divers* of the King's subjects. The party was convicted, and the indictment was held to be supported by evidence that he bathed in the sea naked opposite to the East cliff at Brighton, on which cliff there was a row of inhabited houses, from the windows of which he could have been distinctly seen, while undressed. And it fully appears from the precedents, that the allegation that the nuisance existed to the dwellings of *divers* citizens or inhabitants, is sufficient. *Whart. Prec.*, (3rd Ed ,) *Nos.* 706, 707, 708, 712, 719 *and* 721; 2 *Whart. Cr. L.*, secs. 2363, 2364, 2378-9. See also, *Reg. vs. Watson*, 2 *Cox Cr. Cas.*, 376, and *Reg. vs. Webb*, 1 *Den. Cr. Cas.*, 338.

The indictment in the present case is very near in form to that used in the case of *Rex vs. White & Ward*, 1 *Burr.*, 333; and, in that case, in speaking of the manner of charging the nuisance, the Court said : " It is *sufficiently laid*, and in the accustomed manner. The very existence of

the nuisance depends upon the number of houses and concourse of people ; and this is a matter of fact to be judged of by the jury."

After careful examination of the indictment, in the light of authority and precedent, we think the offence is sufficiently charged, and that the Court below committed no error in overruling the demurrer, and also the motion in arrest of judgment ; and the judgment will therefore be affirmed.

*Judgment affirmed.*

(Decided 27th June, 1878.)