[Filed December 7, 1885.]

## SAMUEL HEIPLE *v.* THE CITY OF EAST PORT-LAND.

MUNICIPAL CORPORATIONS — ROADS — STREETS — JURISDICTION OVER.— The transfer by the legislature of jurisdiction over a previously established county road, from the county to a city within which it is located, does not thereby convert it into a street, as contradistinguished from a county road, nor subject it to the burdens which can only be imposed upon streets. Merely taking from the county and giving to the city the power to work on the highways therein does not of itself affect the character of the highways as such.

SAME—ROADS AND STREETS—DEFINITION OF.—The word "road," in legal acceptation, is the same as "public highway." A "street" is a road in a city or village.

SAME — USER.— STATUTE OF LIMITATIONS.—The use by the city of a road within its boundaries, the improvement thereof by its street commissioner, and other acts of control not inconsistent with its character as a road over which the city had jurisdiction as such, do not constitute such proof of acquiescence by abutting owners in the use thereof as a street as to sustain a plea of the statute of limitations.

DEDICATION — INTENT.—The facts examined, and held not to establish an intent to dedicate as a street.

MULTNOMAH COUNTY.   Plaintiff appeals.   Reversed, and perpetual injunction ordered.

*E. D. Shattuck* and *S. Huelat*, for Appellant.

The power to construct or repair a highway does not imply a power to charge the expense of such repair or construction against the owner of the adjacent land, nor

authorize the expense of such repair or construction to be imposed as a lien on the abutting land, as may be done in case of the improvement of a street, unless a public highway is to be deemed a street. But a highway is not a street. (*Indianapolis* v. *Croas*, 7 Ind. 9; *Lafayette* v. *Jenners*, 10 Id. 74, 79; 2 Dillon on Corp., secs. 676, 677; notes; *Debolt* v. *Carter*, 31 Ind. 367; *Clark* v. *Commonwealth*, 14 Bush, 169.) A grant to the city of East Portland to construct, clean, repair, and remove obstructions from highways and streets does not divest the county of authority over the public roads within the city which have been laid out and opened by the county board. (*Bell* v. *Foutch*, 21 Iowa, 119, 131; *Barrett* v. *Brooks*, Id. 145; *Baldwin* v. *Green*, 10 Mo. 410.) All modes of opening, widening, and closing streets by right of eminent domain are of course subject to the constitutional inhibition that the legislature shall enact no law authorizing private property to be taken for public use without just compensation. (*Dyckman* v. *Mayor etc.*, 5 N. Y. 439; *Philadelphia* v. *Dickson*, 38 Pa. St. 249.) But a municipal corporation has no implied power, in the nature of eminent domain, to condemn lands of an individual for local improvements. The right is originally wholly in the state, and can only be exercised by a city or other municipal corporation in virtue of some *express* legislative grant. (*Dickinson* v. *Mayor, supra; Waterworks Co.* v. *Burkhart*, 41 Ind. 364.) And when the power has been delegated by the legislature to a municipal corporation, its exercise is subject to the inflexible rule that it must be strictly pursued. (*State* v. *Jersey City*, 25 N. J. L. 310; *Harbeck* v. *Toledo*, 11 Ohio St. 219.) If this strip of land had been dedicated as a street, it would not have become a street so as to make any person liable to pay for improving it until it was formally established by the city as a street. (*Clements* v. *West Troy*, 16 Barb. 251.) No municipal board can

finally determine that a highway already exists over private land. (*Shedon* v. *Kalamazoo,* 24 Mich. 383, 386, 387; *People* v. *Brighton,* 20 Mich. 57.)

*Cornelius Taylor,* for Respondent.

An intent to dedicate will be presumed against the owner, where it appears that the easement in the street or property has been used and enjoyed by the public for a period corresponding with the statutory limitation of real actions. (*Onstott* v. *Murray,* 22 Iowa, 457; *Manderschid* v. *Dubuque,* 29 Id. 73; *Commonwealth* v. *Cole,* 26 Pa. St. 187; *Thayer* v. *Boston,* 19 Pick. 511–514; S. C., 31 Am. Dec. 157; *Bush* v. *Johnston,* 23 Pa. St. 209.) A dedication of land for streets in the limits of a municipal corporation may take place without any written conveyance, and may be inferred from acts or verbal declarations. Where the *animus dedicandi* is established, no user for any definite period by the public is necessary. (*Marcy* v. *Taylor,* 19 Ill. 634; *Daniel* v. *North,* 11 East, 374; *Barraclough* v. *Johnson,* 8 Ad. & El. 103; *Cincinnati* v. *Lessee of White,* 6 Pet. 331.) The act approved October 25, 1872, granting to the city of East Portland the right to control the public highways within its territory, excepted the same out of the jurisdiction of the County Court of Multnomah County, and provided a tax to be collected by the city and applied to the " repair of streets in the said city." The effect of that act was to make all county roads within the city limits streets of said city, and such a grant created in the city a *vested right* as a successor to the county's interest in those roads as highways, which right could not be divested by any subsequent legislation. (*Blanding* v. *Burr,* 13 Cal. 343.)

LORD, J. The appellant was the owner of certain lands in East Portland described in his complaint. He alleged

that of the lands so owned by him the defendant city had unlawfully, and without authority, taken and appropriated as a street, or part of a street, a strip 30 by 322 feet; that he had not at any time, or in any manner, dedicated the same as a street, and that the city of East Portland had not, by any action, suit, or proceeding whatsoever, opened, laid out, widened, or extended Fourth Street over said strip, but that, notwithstanding this, the city authorities, in the year 1883, declared the same a part of Fourth Street, and proceeded under the charter, against the appellant's will, to have the same improved as a part of said Fourth Street, by grading and planking a roadway, and grading and planking sidewalks thereon, and afterwards, under the provisions of said charter, the expense of making said improvement, to wit, $676.11, was charged against appellant, and declared to be a lien on his other lands abutting upon said 30-by-332-feet strip claimed and improved as a part of Fourth Street; that under and in pursuance of said proceedings, the common council of East Portland had caused a warrant to be issued to the marshal of the city, directing and requiring him to sell said abutting property to pay for said improvement, and that the same had been levied by said marshal upon said property, which was then advertised for sale. It is also further alleged that in 1867 the County Court of Multnomah County duly laid out, established, and caused to be opened, a public county road over and along the identical 30 by 322 feet of ground now claimed and improved as a street, and that the same has since been maintained as a county road, etc.—concluding with a prayer for an injunction. The defendant city corporation answered, admitting the establishment of the county road in 1867; alleging that the city had at all times since its incorporation in 1870 occupied and controlled Fourth Street, including the portion in dispute,

as a street and public highway of said city, and had at all times, at the corporate expense, repaired and kept the same in repair as such, with the full knowledge and assent of the appellant; and also specially pleaded the statute of limitations of ten years. As a separate defense, it further pleaded that in 1882, the appellant laid off his land immediately east of and adjoining Fourth Street, as claimed by the city, into lots and blocks, and had made and recorded a plat thereof, recognizing Fourth Street as such at the identical point in question; and as another and further defense, it set up the act of October 25, 1872, alleging it to be a grant to the city of the right to control all county roads within its limits. The reply put in issue all the essential matters alleged by the defendant. The suit was referred, the evidence taken, the findings and conclusions of law in favor of the defendant reported to the court, and subsequently, upon motion, after argument, was confirmed by the court, and a decree entered in accordance therewith. To reverse this decree, and to secure the affirmative relief prayed for in his complaint, the plaintiff has brought this appeal.

The denial of the injunction was based on the three defenses set up by the defendant, and the sufficiency of these defenses is the question to be determined. In effect, the first defense was that the legislature had granted the premises in dispute—it being then, and at the time of such grant, a public county road—to the city as a street, and by virtue thereof it became a vested right in the corporation. Preliminarily, it may be said that the plaintiff does not deny the existence of the highway as originally established, and the authority of the city to exercise jurisdiction over it as such, but he does deny that the effect of the act was to impose any new liability or burden by virtue of such jurisdiction upon the property holders or lands adjoining such road or highway that was not included in its original establishment.

It seems that the city of East Portland was incorporated by an act of the legislative assembly approved October 26, 1870, and that the land in question was included in its limits.   By a subsequent act, October 25, 1872, the authority was conferred on the city to control the public highways within its territory, and excepted the same "out of the jurisdiction of the County Court of Multnomah County."   Now, say the counsel for the city, the effect of this last act was to make all county roads within the city limits streets of the city, and liable to all the consequences of jurisdiction over them as such.   If this proposition is correct, the plaintiff has no case, and the decree cannot be disturbed.   As relevant to this discussion, it may be said that one of the effects of the act of 1872 was to withdraw the jurisdiction of the County Court over county roads within the limits of the city, and to confer it upon the municipal authorities.   The county left and the city took such roads or highways just as they had been laid out and established by the County Court.   So far, it was simply a change of jurisdiction over the same subject-matter.   As a road, the property of the plaintiff was not liable to the assessment or burden sought to be enforced.   To make it so liable, it must become a street ; and to effect this result, the argument is, that the change of jurisdiction converted the road into a street, and thereby the property in dispute became liable to new and additional burdens, or to be assessed for the improvement made, which can only be imposed upon streets.   It may be doubted that if the act declared in express words what is sought to be established by inference, thereafter such roads should be streets, if the results claimed would follow.   To say the least, there is involved in the assumption consequences so dangerous to the rights of private property that the right to subject the property in dispute to the burden sought to be imposed ought to be grounded in a power or authority not inferred, but expressly con-

ferred, and when exercised, strictly pursued. The case is different where by the act the limits of the city are extended and new territory is acquired and subjected to the laws and jurisdiction of the municipality. Here, the highway existed as a county road, and subject to county jurisdiction before and after the act of incorporation, and within the limits of the city. Subsequently, the jurisdiction was transferred over such roads to the city, and the question is, whether such highways continued to retain their character as roads, as contradistinguished from streets, without some affirmative legislation impressing that quality upon them. There is a recognized distinction between highways or roads and streets, although they are often used in the same sense as importing a public way for passage or travel. The word "road" is uniformly taken as a public highway, and such is the common and legal acceptation of the word "road." (*Respublica* v. *Arnold*, 3 Yeates, 422.) It is therefore synonymous with highway. A street commonly refers to a public highway in a village or city, and ordinarily includes a sidewalk and roadway. (*Himmelmann* v. *Satterlee*, 50 Cal. 69.) "The word 'street,' as commonly understood," said Agnew, J., "means a public highway in a town between houses or lots for travel of all persons on foot or on horseback or in carriages." (*Reed* v. *Erie*, 79 Pa. St. 352.) "The word 'street,' *prima facie* and naturally, imports a public highway." (*Hamlin* v. *City of Norwich*, 40 Conn. 25.) "Strictly," said Marvin, J., "a street is a paved way or road, but the term is used for any way or road in a city or village. It is defined by Bouvier (Law Dict.) as a road in a city or village. Thus a highway is a road, and a street is a road." (*Brace* v. *New York Cent. R. Co.*, 27 N. Y. 260. See also *Conner* v. *New Albany*, 1 Blackf. 88, 89; S. C., 12 Am. Dec. 207; *Debolt* v. *Carter*, 31 Ind. 355; *Clark* v. *Commonwealth*, 14 Bush, 169; *State* v. *Moriarty*, 74 Ind. 104.)

Referring now to the provisions of the charter, the act of 1870, subd. 11, sec. 2, p. 147, and the act of 1882, subd. 11, provides in the same words that the board of trustees (common council) has power to remove all obstructions from the *public highways*, streets, etc., and provides for the construction, repair, and cleaning of the same. (Sess. Laws.) Here, there seems to be a recognition of the two classes of ways—highways and streets; and at this time, and until the act of 1872 was passed, the county roads leading into and within the city were under the control and supervision of the County Court. During this interim, there necessarily were two classes of public ways within the limits of the city—county roads or highways, under the jurisdiction of the County Court; and streets, subject to the jurisdiction of the municipality. In the act of 1870, art. 4, p. 149–157, and amendments thereto by the act of 1872, p. 176–181, Sess. Laws, which provide for the manner, etc., of improving *streets*, altering and establishing grades, etc., the word "street" is only used—highway is not mentioned. Is not this a further recognition that it was streets, and not highways, which were to be subject to these provisions? Again, the act of 1872 conferred a power not granted by the act of 1870—a power to lay out, extend, and open streets. This was a grant of power, not only to make a way for the public where none existed before, but a power, as the counsel for the plaintiff contends, to impress on public highways, when abandoned by the county authorities, the character of streets. But section 34 of the act of 1872 provided that "the territory within the limits of the city of East Portland is hereby excepted out of the jurisdiction of the County Court of Multnomah County upon the following subjects, to wit, to divide the same or any part thereof, into road districts, or to appoint supervisors of road districts for any part thereof, or to lay out, open, or work on the *highways therein*." Was this any more

than saying that the County Courts shall not have the power to lay out or open highways within the limits of the city, or "to work the *highways therein*, or to appoint road supervisors," etc., over them? Its jurisdiction was taken away, but were the highways therein disturbed or destroyed? What more was intended or meant than that the city should succeed to the jurisdiction withdrawn, and control and work the highways therein? Is this not an express recognition that there were highways within the limits of the city, and in effect giving the city control of them as such? Merely taking from the county and giving to the city the power to work on the highways therein would not of itself affect the character of the highways as such. A transfer of jurisdiction from one tribunal to another does not necessarily affect the nature or character of the thing upon which such jurisdiction is to act; and if such is the object, especially in cases of this character, where important cou ¬quences are claimed to follow it, the legislative intent ought to be so expressly declared. To hold, therefore, that the effect of the act (section 34) was to convert these highways into streets, with the attendant consequences claimed, the legislative intent ought to be clear, and grounded in something more than mere inference.

But the fact is, the inference is otherwise; it is rather that the "highways therein" shall remain as such, subject, however, to the supervision and control of the city to work and keep them in repair; and if this be not so, what are we to do with the act of 1882 (Sess. Laws, p. 96), repealing section 34 of the act of 1872, and reviving the jurisdiction of the County Court over the highways within the city? This act simply transferred the jurisdiction back to the County Court in respect to the matters of which it had been deprived by section 34 of the act of 1872. Does this not repel the assumption that

the highways within the city were converted into streets by the section of the act last cited? The County Court could only take jurisdiction of highways within the city, and we must assume or declare the act unconstitutional, or that the effect of section 34 of the act of 1872 did not make such highways streets of the city. Conceding that the city, as counsel for the plaintiff admits, by virtue of another power with which it was invested, by a proper proceeding for that purpose, could have impressed upon the highways within the city the character of streets, whereby the liability sought to be imposed would attach, it did not nor had not done it when the act of 1882, p. 96, was passed. To say the least, the act evidently contemplates that there were highways within the city limits still in existence, and which had not, by any proper authority or proceeding, become streets; and that as to these, which had not been made streets, the jurisdiction of the County Court was resumed. It is not contended that the highway, as originally established, and which the property in dispute adjoins, ever became a street, except by force of section 34, *supra.* This, we have seen, was not the effect of that section. It must, then, be a highway, and not a street, and consequently, not subject to the local assessment sought to be imposed. The fact that the city had the power to impress the quality of streets upon such highways, does not alter the question. It must be exercised to produce that result. And as such highways were not converted into streets by the effect of section 34, they necessarily remained highways within the city, subject to be controlled by the city as such, so far as this section was concerned, and until deprived of that character by the exercise of some other power. As this view harmonizes the different acts, and makes their different provisions consistent with each other, and does not involve the necessity of declaring any of them void,

and at the same time protects private rights, it is thought to be more in conformity with the rule of construction adopted by the courts in such cases.

The next defense is user as a street, with the consent of the plaintiff, for more than ten years.   This is sought to be proved by work done by the city under the supervision of its street commissioner, and other acts on this highway, with the knowledge and consent of the plaintiff.   The assumption is that these things were done on it as a street, and not as a highway, and with the full knowledge of the plaintiff.   Neither the work done nor the use was inconsistent with the proper purposes of a highway over which the city had jurisdiction as such; and certainly there is nothing in the testimony to show that the plaintiff ever admitted or understood the use of the highway, or the work done on it, to be other than what belonged to it as such.

The next defense is estoppel by dedication in this, that the plaintiff had sold lots abutting upon the disputed tracts according to a recorded plat, recognizing the same as a street.   As stated, this certainly would be a good defense.   But the difficulty is that the plat filed and recorded, which dedicates certain streets on it to public use, contains in the conveyance connected therewith an express reservation to this effect, "except it is expressly understood that the east half of Fourth Street, as represented in the annexed plat of this addition, is the only portion of said street intended to be released, dedicated, and appointed to the public use in this conveyance."   And to give emphasis to this reservation, and to show only that portion which is intended by the plaintiff and his wife to be dedicated as a street, red lines are marked on the map to indicate it.   This utterly precludes the idea that he ever intended to dedicate the west half as a street, and it is impossible for any one to

read the reservation, and note the red lines on the map, and be deceived. The law in respect to dedication, as ably presented by the city attorney, is not questioned; but its inapplicability arises in the fact, as we view it, that the record shows that there was no intent to dedi-cate the portion in dispute, but, on the contrary, it was expressly reserved. It follows from these views that the decree must be reversed, and the injunction be made perpetual.