his petition stated the foregoing facts, and charged that the accident occurred through the negligence and unskillfulness of the defendant in the construction and maintenance of the bridge and in the running of the train.   On demurrer to this petition, on the ground that it did not state facts sufficient to constitute a cause of action, held, 2, that the defendant as a common carrier of passengers is not liable for the loss of money kept in the sole custody of a passenger, and which he carried, without notice to the defendant, for a purpose unconnected with the expenses of the journey, notwithstanding such loss was occasioned by the negligence of defendant's servants; and that the demurrer to the petition was well taken."

Now, notwithstanding the negligence which was charged in the petition here upon the part of the railroad company, they hold that the railroad company was not liable to the owner of the money. That case differs slightly from the case at bar, in this that in that case the money was upon the person of the passenger, and under his personal control; in this case, the jewelry was in the trunks, and these trunks were upon the cars. To this extent there is a difference; but I am unable to see that there is any difference in the proposition that the railroad company owed no obligation to the owner of the money by reason of any contract relation with that owner. They had received nothing from him for carrying the money, they were not aware that the money was being carried; and these facts exist in this case, precisely as they did in that. The Toledo & Ohio Central Railway Company, for aught that is shown in the testimony, received nothing for carrying this jewelry as property, nothing because of its value, nothing from the owner of the property, either directly or through its agents, and, under these circumstances we think that the case is nearly parallel—the case at bar —and in the light of and instructed by the decision of the Supreme Court of the United States, as we must be, and the finding in the cases in Massachusetts covering the case at bar, we think the court should follow the authorities thus found, and sustain the motion in this case, and take the case from the jury. The motion therefore wlil be granted.

---

(Hamilton County Common Pleas Court.)
October Term, 1894.
ARTHUR DUFFY v. THE VILLAGE OF NORWOOD et al.,

---

Title in the public by prescription in the use of a way—Assessable frontage,

---

BUCHWALTER, J.

This cause is submitted upon a trial of issues of fact as well as law.

Two questions are submitted —the first, whether Huston avenue is a public street in said village; the second, what is the assessable frontage of plaintiff's property?

These lots were laid off in a division of the Williams farm. The usual size contained one acre, but the one, being cut into diagonally by Huston avenue, contains only seven-eighths of an acre (to the middle line thereof). In the original division deed, 1871, the grantor described the seven-eighths acre tract as bounded in part by a line (giving distance and course) running "in the middle of a sixty-foot road,' etc. This description had been repeated in each conveyance respectively until the title vested in the plaintiff. The proof submitted is meager as to the use of this road, mainly in the memory of one witness, showing that the fence across the road was removed within the year after the deed from Williams; that people began using the designated road soon thereafter. Hopkins avenue, intercepting it at the northerly end, was dedicated in 1867, and improved thereafter by the county. Thereafter the public authorities in that road district graded and improved it in some degree. The Hopkins sub division in 1874 adjoined on the opposite half, and the recorded plat shows a sixty (60) foot strip of this Huston avenue. This territory was annexed to Norwood in March, 1891, with this avenue on the plat as a sixty (60) foot street, and the same is recorded November 3, 1891, as formally accepted by the platting commission.

The resolutions of the village council to improve Huston avenue, and the various steps taken by it therein are equivalent to form an acceptance of the same as a public street, and the same rule applies to the work on it as a county road.   Steubenville v. King, 23 Ohio St., 610.

However, the deed of the original grantor describing a sixty-foot road, one half of which is laid off on this seven-eighth acre tract and the other on another seven eighth acre tract owned then by the grantor, is a dedication of the same on his part to the public use, and the plaintiff holding title by such deed recitals, is estopped to deny that it is a road. It is claimed by plaintiff's counsel that a mere designation of that strip of land as a road only conveys a private way on behalf of those owning in the original farm. But Bouvier (Vol. 1, Inst., p. 17,) defines a road to be "a passage through the county, or a part of it, for the use of the people."

In Morgan v. Palmer, 48 N. H., 336, it was held that a reservation in a deed of the rangeway, if ever wanted for a road, is not for a private way, but for a public highway, if ever needed for that purpose.

In Homer v. State. 49 Md., 286, the word road used in an indictment, was held to mean a public road. See also Republica v. Arnold, 3 Yeates, 441; Steadman v. Southbridge, 17 Pick. 34 (Mass.) 162; Heiple v. East Portland, 13 Ore., 97.

Elliott on Roads and Streets, page 5, "the word road naturally conveys the idea of a way over which the people have a right to pass and repass. * * *

So does street, in describing a way in a town or city, mean a public street; Elliott, pp. 4 and 5.

See Lewis, Sec. 166, Eminent Domain.

The proof establishes title in the public by prescription in the use of the way for more than twenty-one years by the people as a public road.

If there were ambiguity in the meaning of the word road, the proof fairly shows a construction thereto that it was a public road, by the acts of the plaintiff and his respective grantors, and by the acts of the public, with his and their knowledge.

The undisputed proof shows that plaintiff used both lots as one homestead.

The location of the house, stable, drive and foot ways, as well as the use clearly show the real frontage of the property to be on Williams avenue, and not on Huston avenue. There is no driveway or walk connecting with, nor is there any improvement fronting on Huston avenue.

The breadthwise front on Williams avenue, therefore, is the assessible point, to-wit:—
——feet, and, therefore, the assessment is held invalid without prejudice to reassessment, unless counsel now agree on the assessment based on——feet.

Edward Moulinier and Burch & Johnson, for Plaintiff.

Wm. E. Bundy, for Village.

---

(Lucas County, Common Pleas Court.)
September Term, 1894.

### MILES v. BARBOUR & STAR.

*Defective appliances—Latest improvements—Personal injury by employe—*The allegations in the petition that the machine was not of the latest patent, and that if the machine had contained the latest improvement, the accident would not have happened, and that plaintiff was not aware that these late improvements were absent, are not allegations of facts from which negligence of defendants could be concluded; but would be proper in evidence to rebut defendants' claim that they were using such machinery as parties in their line of business generally use.

---

Motion to strike from petition.

HARMON, J.

Plaintiff brings his action for damages caused, as he claims, by negligence on part of the defendants in providing dangerous and defective machinery for the use of the plaintiff, an employe of defendants.

Plaintiff alleges in his petition that he was at work in defendant's mill, running a planer which was constructed to plane boards on both sides at the same time. He says that there was a pipe attached to the planer with a fan intended to produce a current of air in the pipe to carry away the shavings from the knives of the planer. He says that the pipe and fan did not work effectively, and that it was necessary to remove the shavings with a stick or the hand, when they accumulated so as to clog the action of the machinery. Plaintiff says that there was a lever attached to the machine, which when turned to a certain point, would stop the revolutions of the wheels, cogs and knives; that the machinery got out of order, so that when the lever was turned to the point where it was intended to stop the movement of the wheels, cogs and knives, it would not stop them. Plaintiff alleges that he called the attention of the defendant's foreman to the defective condition of the planer, and that the foreman did some work upon it and told plaintiff that it was in proper order, and that the lever would stop the machinery when turned to the proper point; that plaintiff supposed that the machinery was in safe condition to use, and after using it so as to accumulate shavings which needed to be removed, he turned the lever to the point where it would have stopped the machinery if it had been in proper and safe condition; and that he supposed the machinery had stopped, and proceeded to remove the shavings with a stick; but, in fact the wheels, cogs and knives had not stopped owing to the failure of the foreman to put the machinery in proper repair and condition; and by reason of its not being in proper condition, plaintiff's fingers were caught in the machinery; one was torn off, two broken, his hand crushed and permanently disabled for use.

The plaintiff then goes on to state that the machine was not the latest patent, and that only a few such machines were made and sold by the manufacturers; that the machines were afterwards improved by three additional patents, and protection to the operators of the machine was provided so as to greatly diminish the danger; that the machine which the defendants had was one of the first machines made, not the latest improved machine, and that if the machine had been provided with the latest improvements, plaintiff would not have been injured; plaintiff also alleges that he was ignorant that later improvements had not been made, and did not know that the machine he was using was lacking in the additions which made it more safe to be used.

The defendants move to strike out from plaintiff's petition all allegations relative to the machine in use at defendant's mill not having the latest improvements; also the allegation that plaintiff was ignorant that it did not have the latest improvements.

The court held, that the allegations in plaintiff's petition which the defendants moved to strike out, were not allegations of fact from which a conclusion of negligence on the part of the defendants could be drawn; that if such facts could be shown at all, they might perhaps be brought in by way of rebuttal of the defendants' claim that they were using such machinery as parties engaged in business similar to theirs were accustomed to use. If introduced in this way, they would be mere matters of evidence, and need not be pleaded.

Motion granted.

---

END OF VOLUME THREE.