No. 9110.

MORRISON *v*. TOWN OF LAFAYETTE.

1. *Statutes—Construction.* A statute is not to be so construed as to produce absurd or unreasonable results, unless this is unavoidable.

2. *Municipal Corporations—Disconnecting Territory—Statutes Construed.* Petitioner seeking the disconnection of his lands from the town, the municipal authorities relied upon the proviso to sec. 3 of the statute (Laws 1913 c. 52). No part of the lands had ever been platted. The City had maintained a pipe line and hydrant on adjoining lands, but so situated that they could be of little if any benefit to petitioners land.

What was relied upon as a street was a county road, existing before the incorporation of the town, and used as such ever since. The only work done upon it by the town was the ordinary work of repair. The petitioner obtained no additional advantage from the road by the incorporation of the town, or anything done by the town authorities. The petitioner was entitled to the disconnection sought.

A public utility, to come within the statute, must be capable of bene-
fit to a substantial portion of the premises sought to be dis-
continued.

The streets contemplated by the statute are those established by the
municipality, or maintained primarily for municipal purposes,
and the existence of which depends on the continued existence
of the town.

*Error to Boulder County Court, Hon. E. J. Ingram, Judge.*

Mr. FREDRICK T. HENRY, Mr. CARLISLE FERGUSON, for
plaintiff in error.

Mr. J. TAYLOR SMITH, Mr. GEORGE POMEROY, for defend-
ant in error.

Opinion by Mr. Justice Allen.

THIS is a proceeding for the disconnection of certain ter-
ritory from the Town of Lafayette, and was instituted un-
der the provisions of chapter 52, page 154, of the Session
Laws of 1913, entitled "An act to Provide for the Discon-
nection of outlying territory from Cities and Towns." A
petition, conforming to the requirements of the statute, was
filed February 25, 1914 by Louella R. Morrison in the County
Court of Boulder County. Upon the hearing, which was
had on May 12, 1914, the trial court made certain findings
in favor of the respondent, the Town of Lafayette, and re-
fused to enter a decree disconnecting the petitioner's land
from the town. The petitioner brings the cause here for
review.

The judgment in favor of the respondent town was
rendered upon the theory that it established a defense in
that, as it is claimed by the town, for more than three years
prior to the commencement of the action it had maintained
a street running through petitioner's land, and a water
pipe line and fire hydrant adjoining the premises sought to
be disconnected. In other words, the respondent contends,
and the trial court found, that the case falls within the
following provision found in section 3 of the act:

"That whenever a city or town has maintained streets, lights and other public utilities for the period of three years through or adjoining to said tract or tracts of land the owners shall not be entitled to the provisions of this act."

It is clear from the record, if not conceded, that in all other essential respects the evidence is in favor of the petitioner. The main question, therefore, which is presented for our determination is whether or not the evidence, as to the matters referred to in the statutory provision above quoted, is such as to warrant a judgment in favor of the town and against the petitioner.

The land sought to be disconnected from the town consists of three tracts, contiguous to each other, and referred to in the record as Tracts "A", "B", and "C", respectively. Tract "C" containes 12.9 acres, Tract "B" 26.4 acres, and Tract "A" 35.6 acres. The land covers an area of approximately 75 acres. It lies within the corporate limits of the town and in the eastern portion thereof. No part of this 75 acres had ever been platted. The only improvement upon the land is the petitioner's dwelling house, located near the westerly line thereof. Petitioner's exhibit B, found in the record, is a map from which it appears that the tracks and the right of way of certain railroads form a natural division line between the plaintiff's land and the improved and platted part of the town of Lafayette.

The pipe line for water and the fire hydrant, referred to in the evidence, does not lie upon any part of the petitioner's tracts of land. The fire hydrant is located about 225 feet from petitioner's dwelling. There is no direct testimony that the hydrant could be of any benefit to the house in question. If it could be of any advantage to the plaintiff's premises at all, it could no more than serve a very small fraction of the area of such premises. It does not seem, therefore, that the town can, or ought to be permitted to, avail itself of the statutory provision relied on, simply by showing the existence of the hydrant and water pipe line above mentioned. The public utility, to come within the statute, must be so located and constructed as to be

capable of being used to the benefit of a substantial portion of the land sought to be disconnected from the town, or be of some substantial advantage to the owners of such premises. Otherwise the mere existence of a hydrant could prevent the detachment of territory which is not needed for municipal purposes and which is not benefited by being within the corporate limits of a city or town. The purpose of the statute is to permit persons owning real estate lying upon the borders to disconnect it from the town, if no part of such property has been duly platted into lots and blocks. To hold that a water pipe line running up to, or even into, such property without conferring any substantial service or advantage thereto, is such a maintenance of a public utility as to prevent detachment of the land, would be to defeat the main purpose of the statute in many proceedings of this kind. The statute should not be so construed, if it can be avoided, so as to produce absurd or unreasonable results. Similar considerations governed this court in *Anaconda Mining Co v. Town of Anaconda*, 33 Colo. 70, 76 80 Pac. 144, 146 where the court held a certain twenty acre tract of land not to be "upon or contiguous to the border" of the town, within the meaning of the statute, because only about 150 feet of the tract touched the border. The court among other things said:

"If twenty acres or more of land can be disconnected from a town where but a small portion lies upon the border, it follows that a tract can be disconnected by the simple expedient of connecting the territory with the border by a narrow strip. This the legislature did not intend should be done."

The remaining point to be considered is whether or not the respondent town had maintained, as it claims, a street through the premises of the petitioner. The evidence relevant to this matter shows that the street thus referred to is a public highway that was in existence as a county highway at and before the time the town was incorporated. Since that time, the road continued to be used by the public as a county highway. It is known as the Base Line Road

and also as County Road No. 83. It runs east and west through the town, and some distance east of the platted portion of the town it touches a point from which runs a highway toward the north, known as County Road No. 158. When a strip of the Base Line Road became, by the incorporation of the town, located within the town of Lafayette, it did not lose its character of, or identity as, a county highway. It merely became subject to the supervision and control of the town, and the county thereafter had no authority to maintain and keep in repair such road, or so much of the Base Line Road as became located within the limits of the town. *Nelson v. Garfield County,* 6 Colo. App. 279, 40 Pac. 474. As said in *Heiple v. City of Portland,* 13 Oreg. 97, 105, 8 Pac. 907, "merely taking from the county and giving to the city the power to work on the highways therein would not of itself affect the character of the highways as such." There is no evidence that anything was ever done by the town which would change the Base Line Road or County Road No. 83 from a county highway into a street or public utility maintained by the town. On the other hand the evidence shows that the highway remained a county highway. It continued to be regarded and used as such. Neither the use nor the work done by the town was inconsistent with the proper and ordinary purposes of a county highway. Whatever work was done by the town upon any part of the Base Line Road where the same lies through or adjoining the lands of the petitioner was work of such a nature as might be expected to be done by the county upon other sections of the road. It was merely keeping that part of the road in repair, by filling, grading, or dragging. No improvements were placed upon or along the road at any point near the petitioner's land or at any place where the road runs through or adjoining such land, and nothing was done to make the road become anything else than a county highway. The petitioner obtained no additional advantage from the road from the fact that it passed through the corporate limits of the town. The road as it passes through the petitioner's land would

remain as a county highway in case such land is disconnected from the town.

Under the evidence in the instant case, and in view of the foregoing considerations, the Base Line Road or County Road No. 83, so far as the same runs through or adjoining the tracts of land of the petitioner, is not a street or a public highway maintained by the town, within the meaning of the statute. If that part of the road was maintained and kept in repair by the town of Lafayette, that fact would not constitute such a maintenance of a street or other public utility as to preclude the right of of the petitioner to have her land disconnected from the town. The streets or public utilities contemplated by the statute in question, are those established by the city or town, or maintained primarily for its own municipal purposes, and the existence of which streets or public utilities depends on the continued existence of the municipal corporation itself. The highway in question is not within this class.

The judgment is reversed with directions to enter a decree in favor of the petitioner.

Reversed.

Chief Justice Garrigues and Mr. Justice Bailey concur.

Decided July 7, A. D. 1919. Rehearing denied October 6, A. D. 1919.