No. 17,116.

McDONALD ET AL. *v.* CITY OF GLENWOOD SPRINGS ET AL.
(267 P. [2d] 1111)

Decided March 1, 1954. Rehearing denied March 22, 1954.

Mr. WM. ATHA MASON, Mr. FRANK DELANEY, for plaintiffs in error.

Mr. ROBERT DELANEY, Mr. KENNETH BALCOMB, for defendant in error City of Glenwood Springs.

Mr. ROBERT S. ZIMMERMAN, for defendant in error Board of County Commissioners.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy, Mr. JOHN P. HOLLOWAY, Assistant, for defendant in error State Highway Commission.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will hereinafter refer to the parties by name or as they appeared in the trial court, where plaintiffs in error were plaintiffs and defendants in error were defendants.

The State Highway Commission of Colorado, prior to the commencement of the action in the trial court, approved the construction of a new bridge across the Colorado river at Glenwood Springs, Colorado, to be constructed entirely within the corporate limits of that city. The estimated cost of the bridge was $550,000.00, one-half of which was to be paid by the United States under a federal aid secondary project. The bridge was to become a part of, and an improvement to, State Highway No. 82, and was to be constructed at the site of the existing bridge over the river. The State Highway Department requested the County of Garfield to participate in defraying the expense of the new bridge to the extent of one-fourth the cost thereof, without which the bridge could not be built.

November 23, 1949, the county commissioners of Garfield county adopted a resolution declaring the existence of an emergency for the construction of the proposed bridge, and stating that Garfield county should participate in the cost of construction to the extent of one-fourth, not exceeding however $125,000.00.

April 30, 1952, the City Council of Glenwood Springs adopted a resolution declaring Grand avenue part of Highway No. 82, including the bridge "constructed or to be constructed across the Colorado River."

September 2, 1952, a formal written contract was entered into between the City of Glenwood Springs, the County of Garfield, and the State Highway Commission. The contract contained the statement that questions had arisen concerning the legality of Garfield county's contribution for the construction of the bridge, "which questions are to be determined in an action brought by the parties hereto to obtain a declaratory judgment to determine such questions * * *."

The instant action was instituted September 29, 1952. By the agreement above mentioned, Garfield county agreed to reimburse the Department of Highways in the amount of one-fourth of the cost of the project, not exceeding $125,000.00, said contribution to be made in specified payments. The Highway Department agreed to award the contract for the building of the bridge, and to pay for it. The City agreed to assist in procuring the right-of-way, but payments made in the acquisition thereof were to be made from state and federal funds. The City agreed, upon completion of the bridge, to keep it clean and painted, and to perform necessary minor maintenance up to $500.00 in any calendar year. The county guaranteed performance by the City of the maintenance requirements, and agreed that the Highway Department might do the work if the City failed to do so, and bill the county for the cost.

Plaintiff McDonald, as a resident and taxpayer of Garfield county, brought the action for herself and others similarly situated. She alleged that the resolution of the Board of County Commissioners, and the contract of September 2, 1952, were ultra vires and void, and that the budgets approved by the Board, which included $62,500.00 per year as the county's contribution under the contract, likewise were illegal.

In the complaint, an injunction was sought to prevent the county from performing the contract, and for a declaratory judgment concerning the legal rights and status of the parties in the premises. Defendants in their answer denied illegality of the acts of the county and the City.

Five owners of real estate in Glenwood Springs filed a petition in intervention on October 20, 1952. By stipulation they were allowed to appear as parties plaintiff. They adopted the allegations in plaintiff McDonald's complaint; asked for the same general relief; and in addition prayed that the above recited acts of the City of Glenwood Springs be declared void.

Defendants filed a motion for summary judgment, and, upon the argument thereof, it was stipulated that there were no genuine issues of fact, and all parties joined in asking the court to enter a declaratory judgment and thereby to determine all questions of law raised by the pleadings and the agreed facts. The court thereupon adjudged the contract to be valid.

Question for Determination.

*At the time of the events hereinabove set forth, did the Board of County Commissioners have the power to enter into a contract for the expenditure of county funds for the construction of a bridge on a state highway, where said bridge was to be erected entirely within the limits of a city of the second class?*

The question is answered in the affirmative. Counsel for plaintiffs argue that "the principles announced in *Nelson v. Board of County Commissioners of Garfield County,* 6 Colo. App. 279, 40 Pac. 474, and followed in *City of Trinidad v. Las Animas County,* 27 Colo. App. 207, 147 Pac. 439, and approved in *Morrison v. Town of Lafayette,* 67 Colo. 220, 184 Pac. 301, established fundamental principles which are still applicable, unless modified by statute, and that there are no statutes in existence which modify those principles so far as they pertain to the facts here involved." The Nelson case, supra,

was decided in 1895 and therein it was held in essence that the County Commissioners of Garfield county were without power to appropriate county funds for the purpose of constructing a bridge within the limits of a town, and that a taxpayer of the county could prevent any such misapplication of county funds by suitable action. The two other cases above mentioned were cited in the Nelson case with approval. At the time each of the above mentioned cases was decided there was no statutory provision giving the Board of County Commissioners power to make agreements with a state highway authority for the construction of state highways.

In 1921 the General Assembly enacted the Highway Law which became Article 12 of Chapter 143, '35 C.S.A. The said Act, in section 105 thereof, set forth the duties and powers of the state highway engineer and included therein the power to, "Make agreements on behalf of the state with the approval of the governor with any county, city, town or city and county, of the state for the construction or maintenance of any part of the state highways at the joint expense of the state and the county, city, town, or city and county." This statute remained unchanged until 1952 when the Department of Highways Act was adopted by the legislature. (Chapter 57, S.L. 1952.) We are satisfied that by section 5 of the Act the legislature intended, generally, to transfer the powers and duties of the highway engineer from that officer to the newly established State Highway Commission. (Chapter 143, section 91 (5), '35 C.S.A., as amended.)

It is true that the power expressly conferred upon the highway engineer by the 1921 Act, to contract with counties for the construction of state highways, was not specifically re-enacted by section 5 of the 1952 Act. We are satisfied, however, that the enactment of the Department of Highways Act was not intended to divest the Department of Highways, or the respective counties or cities, of the then existing power to contract with one another. In support of this assertion we direct attention

to chapter 260, S.L. 1951, by which the County Road and Bridge Fund for each respective county was created to receive the numerous tax moneys, " * * * to be expended by a county for road and bridge construction, maintenance and administration, * * *." (Section 1, chapter 260, S.L. '51.)

If the counties, cities and the state can each individually spend these various moneys for roads and bridges, and by virtue of section 114, chapter 143, '35 C.S.A., as amended, designate, establish and construct said state or county highways in, into or through cities and counties, cities or towns as connecting links, then it certainly seems to be logically implied or inferred from the statutes that they may contract with one another to do so. It is common knowledge that this practice of contracting for joint construction or maintenance by and between these three governmental units has been followed for many years openly and without concealment. There can be no doubt that by virtue of sections 3, 4 and 44 of chapter 202, S.L. '53, effective December 31, 1953, this practice is specifically authorized and approved. Our legislature apparently felt such authority to contract with one another was at least implied as it expressly confirmed and ratified existing contracts between these governmental units in subsection (d) of section 44, chapter 202, S.L. '53. This subdivision provides: "(d) Existing valid contracts between the parties enumerated in subsections (a) and (b) above shall not automatically be voided by the adoption of this Act, but are hereby expressly confirmed and ratified; *provided, however,* that upon the agreement of all parties to a contract, such contract may be modified in accordance with this Act." Accordingly we hold that the county commissioners of Garfield county and the City of Glenwood Springs had the power to enter into the contract in question.

Determination of this question is decisive of the issues presented. We are of the opinion that other points ar-

gued by counsel for plaintiffs are without substantial merit.

The judgment is affirmed.