Argued November 21, decided December 17, 1912; rehearing denied January 28, 1913.

**BOWERS v. NEIL.**[*]

(128 Pac. 433.)

**Bridges—Duty of County to Repair.**

1. While, as a general rule, when a municipal corporation is created over territory lying within the county, the power and duty to repair roads therein is imposed on the municipality, the highways being impressed with the character of streets unless there are statutes to the contrary, yet, as the question whether

---

[*]On the question of liability of a county for injuries to travelers by bridges being out or repair, see note in 39 L. R. A. 33.

As to what constitutes the creation of an indebtedness within meaning of debt limit provision, see note in 37 L. R. A. [N. S.] 1058.

                                                            REPORTER.

such roads shall become streets depends on the intention of the legislature, and as both the county and the municipality are arms of the State, the duty of repairing a bridge on a county road, which, by the extension of its boundary, was within the limits of the city of Medford, is under Medford Charter (Sp. Laws 1901, p. 205), Section 105, providing that all bridges and culverts in said city and road district and upon any county road shall be built and maintained and repaired by the county, and Section 937, subd. 4, L. O. L., authorizing the county court to provide for the erection and repairing of public bridges on any highway, imposed upon the county.

**Statutes—Special Legislation.**

2. Where the general law gave the county jurisdiction over county roads in cities, Medford Charter (Sp. Laws 1901, p. 205), Section 105, providing that all bridges of certain character on county roads within the city should be repaired and replaced by the county, is not in violation of Article IV, Section 23, subd. 7, of the constitution, providing that there shall be no special or local laws for the laying, opening, and working of highways, the constitutional provision referrirng rather to the mode of laying and working highways and the expending of money therefor than to the fixing of the burden of their repair.

**Counties—Fiscal Management—Incuring Indebtedness—"Voluntary Indebtedness."**

3. Indebtedness incurred by a county for the construction of a bridge on a county road is a voluntary indebtedness within the prohibition of Article XI, Section 10, of the constitution, fixing the limit for such indebtedness.

**Highways—Fiscal Management—Levy and Expenditure of Taxes.**

4. The county court may or may not in its discretion levy the road tax, authorized by Section 6320, L. O. L., and though it cannot be compelled to do so, it cannot expend such funds, when collected by levy under that section, for any purpose other than directed by the statute, and, if they are commingled with other moneys, the conversion must be treated as a loan.

**Counties—"Indebtedness"—What Constitutes.**

5. Under Section 6320, L. O. L., authorizing the county court to levy a special tax which shall be set apart as a road fund to be used in the building and improving of public roads and bridges, 50 per cent to be apportioned to several road districts and the

remaining 50 per cent to be applied to roads as the county court may direct, and in view of Section 6366, providing that the county courts of several counties may, in their discretion, apply any moneys in the county treasurer toward the expenses of bridges of a county road—a contract for the erection of a bridge, where the necessary funds have been raised by special tax and appropriated therefor, does not create an indebtedness within Article XI, Section 10, of the constitution, providing that no county shall incur any debts or liabilities which shall singly or in the aggregate exceed the sum of $5,000.

From Jackson: FRANK M. CALKINS, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by Benton Bowers and S. A. Carlton against J. R. Neil, County Judge, James Owens and J. F. Brown, as the Board of Commissioners and County Court for Jackson County, Oregon, W. R. Coleman, County Clerk, James Cronemiller, County Treasurer, and E. G. Perham, Contractor, to restrain the enforcement of a contract for the building of a bridge. From a decree in favor of plaintiffs defendants appeal.

The contract provides for the construction of a bridge across Bear Creek, in the city of Medford, and was made between the county and the contractor June 6, 1912. The contract price was $33,900. Of this amount, however, the city of Medford has agreed to pay $13,500, and the Pacific & Eastern Railway Company, $2,500, making some allowance for extra expense, and leaving $18,000 for the county to pay. Defendants consent that payment of any sum in excess of this amount be enjoined until the city and railway company pay the stipulated sums. There is no dispute as to the facts. Those not admitted by the pleadings are agreed upon by the parties. In 1884 a highway connecting with the east end of Main street was laid out and opened as a county road. Upon this the bridge is proposed to be erected. Some years ago the county built a bridge across the creek at the proposed site, and has since continued to maintain the same.

When Medford was first incorporated in 1885, the town limits did not include this site, but in 1889, by a legislative enactment, the limits were extended about one-third of a mile east of the creek so as to include the bridge on East Main street, which is one of the principal thoroughfares of the city of Medford. By the original charter (Laws 1885, p. 391) and the amended charter of 1889 (Laws 1889, p. 364) the municipal authorities were empowered to provide for the construction, grading, and repairing of highways, streets, and sidewalks. No express provision was contained in those enactments inhibiting the Jackson County court from exercising authority over county roads within such limits. In the charter of 1901 (Special Laws 1901, p. 205) Section 105 was enacted, which is as follows:

"All bridges and culverts in said city and road district, upon any county road thereon, the cost of construction of which will not exceed the sum of $20, shall be built and maintained by said city, but all others in excess of said sum shall be built, maintained and repaired by the county in which said city is situate."

By special act of the legislature in 1905 (Special Laws 1905, p. 989 *et seq.*), the town of Medford was changed to the city of Medford. Section 105 was retained in this latter act. This law provides that the city of Medford and certain contiguous territory shall constitute an independent road district. And Section 98, p. 1012, of the same act, directs that the city council shall have the same power and authority over all county roads within the limits of said city as it has over the streets of said city, for certain specific purposes. At the time of the awarding of the contract, there were outstanding warrants of Jackson County aggregating $509,000, all of which were drawn against the general county fund during the years 1910, 1911, and 1912. Of these, warrants to the amount of approximately $300,000 were drawn and issued in payment of expenditures on roads and

bridges in the county, each warrant specifying on its face that it was drawn for road and bridge expenses. Warrants amounting to about $200,000 were issued for other than road and bridge expenses, these warrants also specifying on their faces for what purpose they were drawn. It is agreed that the tax levy made January 17, 1912, will yield $72,000 for the general county fund, and $76,000 for the general road fund, exclusive of the amount apportionable to road districts. In September, 1911, a contract was made with Twohy Bros., by which they were to macadam about four miles of county road between Medford and Central Point, at an expense of approximately $25,310. Work on this contract began at once, and has continued from time to time until the present. It will take two or three months in which to complete the same. The amount required to complete payment on the contract after June 1, 1912, is about $10,690. At the May term of court, 1912, a second contract was let to the same contractors, by which the macadam was to be extended on the Central Point road. This was completed during May and June. In July, 1912, warrants were issued to the amount of $3,082.25 to pay the balance. On January 1, 1912, the balance in the treasury of Jackson County was $6,340.04.   MODIFIED.

For appellants there was a brief over the names of *Messrs. Neff & Mealey, Mr. William D. Fenton* and *Mr. Benjamin F. Mulkey,* with oral arguments by *Mr. Porter J. Neff* and *Mr. Fenton.*

For respondents there was a brief and an oral argument by *Mr. E. D. Briggs.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The plaintiffs in this suit maintain (1) that the bridge in question, being within the incorporated city, is not upon the county road, and that the county has no authority to build such bridge; (2) that the carrying out

of the contract in question would increase the voluntary
indebtedness of Jackson County beyond the constitutional
limit. As to the first question: Section 937, subdivision
4, L. O. L., empowers the county court, among other
things, to provide for the erection and repairing within
the county of public bridges upon any road or highway
established by public authority. As a general rule, when
a municipal corporation is created over territory lying
within a county, the power and duty to repair roads
therein depends upon the statutes, which sometimes give
the municipality power over that part of the highway
within its limits, or which may allow the county officers
to improve a state or county road, although the improve-
ment embraces part of the highway within the limits
of the municipal corporation. 37 Cyc. 225; *Lewis* v.
*Laylin,* 46 Ohio St. 663 (23 N. E. 288). Unless the
statute directs otherwise, where a city extends its bound-
aries over new territory, the highway therein is im-
pressed with the character of a street and subject to the
exclusive control of the city and to the liability and
servitude of all other streets. *Oliver* v. *Newberg,* 50 Or.
92 (91 Pac. 470) ; *McGrew* v. *Stewart,* 51 Kan. 185 (32
Pac. 896) ; 1 Elliott, Roads and Streets (3 ed.) Section 22.
Whether a county road becomes a street when included
within the corporate limits of a city depends upon the
intention of the legislature as gathered from the city
charter, general laws and the whole course of legislation
on the subject. 3 Dillon, Municipal Corporations (5 ed.),
Section 1138; *Oliver* v. *Newberg,* 50 Or. 92 (91 Pac. 470) ;
*Huddleston* v. *City of Eugene,* 34 Or. 343, 355 (55 Pac.
868; 43 L. R. A. 444). A county government is an arm of
the State; so also is a city, acting in its public or govern-
mental capacity, and at the time of the enactment of the
several charters referred to the legislature had power to
impose upon a county the duty of building, maintaining,
and repairing a bridge, on a county road within the limits

of a city of the county. These municipal corporations are a part of the sovereign family, and it is appropriate that the State should direct and control their government in a manner not inconsistent with the constitution. *Simon* v. *Northup,* 27 Or. 487, 499 (40 Pac. 560: 30 L. R. A. 171). According to the plain provisions of Section 105 of the charter of the city of Medford, it is incumbent upon the county of Jackson to build, maintain, and repair all bridges and culverts upon county roads in the city and road district, the cost of which is in excess of $20. Taking this section, together with the other sections referred to, and in view of the general legislation of the State, we think it was the intention of the legislature that the county of Jackson should retain jurisdiction over the county roads within the limits of the city of Medford to that extent. Unless this requirement is clearly within some inhibition of the constitution, the mandate should be obeyed. It is not a question of expediency, but one of the power of the legislature to enact such a law. As to whether or not the arrangement was an equitable one was for the determination of the legislative branch of the government, and not for the courts. The highway upon which the bridge is proposed to be erected is embraced within the provisions of Section 937, subdivision 4, L. O. L., authorizing the county court to construct the bridge, and for such purpose is to all intents and purposes a county road, as defined in *Bank of Idaho* v. *Malheur County,* 30 Or. 425 (45 Pac. 781: 35 L. R. A. 141). The charter in question differs from the charters of the cities of Eugene and Newberg referred to in the cases above cited.

2. It is contended by counsel for plaintiffs that section 105 of the Medford charter is within the inhibtion contained in Section 23, subd. 7, Article IV of the Constitution, which provides that the legislative assembly shall not pass special or local laws "for laying, opening, and

working on highways, and for the election or appointment of supervisors." This directs that a general rule shall prevail in this State for laying, opening, and working highways, and, insofar as the expenditure of money upon the highways is concerned, requires a general mode of assessment and taxation for the purpose of raising funds to be expended therefor. It has no particular application to the territorial limits of the jurisdiction of the respective county courts. It is admitted that this bridge on East Main Street will accommodate many citizens and residents of Jackson County, and it is clear that the statute gives the county court jurisdiction over the bridge spanning Bear Creek, over which the highway extends. See *Heiple* v. *East Portland*, 13 Or. 97 (8 Pac. 907).

3. We come now to the second question, which is more difficult. It was stipulated by the respective counsel that the county should be enjoined from paying for the bridge all in excess of $18,000 until the city and the Pacific & Eastern Railway Company should pay the amounts agreed. Therefore the question is whether or not the county, in June, 1912, was authorized to make a contract for a bridge to this amount. Section 10 of Article XI of the Constitution is as follows:

"No county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion, or to build permanent roads within the county, but debts for permanent roads shall be incurred only on approval of a majority of those voting on the question."

An indebtedness incurred by a county in constructing or repairing bridges is a voluntary obligation, and, unless a special provision were made to meet such liability, it would come within the prohibiton against county indebtedness contained in this section of the constitution. *Security Co.* v. *Baker County*, 33 Or. 338 (54 Pac. 174).

4, 5. In January, 1912, the county court of Jackson County made an annual tax levy on the property assessed

in 1911. In addition to the other levies provided for by
law, the court levied 1.9 mills on the dollar, or $72,000,
for the general fund, and for the road and bridge fund,
pursuant to Section 6320, L. O. L., 4 mills on the dollar,
or $152,000. One-half of the road fund received has
been apportioned to the several road districts of the
county as required by that section. It then became the
duty of the county officers to set apart the remaining
one-half of the moneys received from the road fund levy
into a general road fund to be expended for county roads
and bridges under the direction of the county court dur-
ing the year 1912. This important requirement of Sec-
tion 6320 the county officers failed to comply with; but,
instead, mingled the moneys received from the general
county fund levy, and the half of the road fund moneys
remaining after the apportionment to the road districts,
and turned the whole thereof into the county general fund.
From this combined fund the county treasurer has
redeemed county general fund warrants of the county,
aggregating $72,930.26, besides some county warrants
redeemed from funds obtained from other sources than
the 1911 taxes.

It is here necessary to further notice the purpose of
Section 6320, L. O. L. This authorizes the county court
of each county in the State to levy a tax of not to exceed
10 mills on the dollar on all taxable property of the county
at the time of making the annual tax levy upon the previ-
ous year's assessment which shall be set apart as a gen-
eral road fund to be used in building and improving
public or county roads and bridges. It directs that such
tax shall be paid in money, and collected as other county
taxes are collected, and when so collected shall be used
for road purposes only; and 50 per cent thereof shall be
apportioned to the several road districts, and the remain-
ing 50 per cent shall be applied to roads in such locality
in the county as the court may direct. If it were con-

templated that the receipts from the levy might be used
in paying outstanding warrants, there would be no reason
for forbidding the payment of the tax in warrants as in
the case of the general fund tax. This fund is, by the
terms of the statute, a special road fund of Jackson
County. Section 6320 authorizes the levy for a road
fund, and specifies how the same may be expended. The
county court in its discretion may or may not make the
levy. It cannot be compelled to do so. *Kime* v. *Thomp-
son,* 60 Or. 183 (118 Pac. 174). But that court has no
authority to expend such funds for any purpose other
than as directed by the statute. *Northup* v. *Hoyt,* 31 Or.
524 (49 Pac. 754). Section 6366, L. O. L., enacts that
when such a fund is exhausted, and an emergency shall
arise demanding immediate action by the county courts,
they are authorized in their discretion to apply any money
in the county treasury not otherwise appropriated to-
wards defraying expenses of building or. repairing
bridges. The plan thus evolved by the statutes, taken
in connection with the provisions for levying a general
annual tax, seems to be that the legislature, taking into
consideration the fact that many counties were in debt
to or exceeding the limit of the constitution, authorized a
levy to be made under Section 6320, to be used for road
purposes only, during the current year, and ordained that
it could be used for no other purpose, leaving the general
county fund to pay the outstanding warrants in the order
issued. Otherwise, when a county has reached its limit
of indebtedness, inasmuch as all road and bridge expendi-
tures are voluntary, it would follow that no county could
legally expend any funds for roads and bridges, unless
it first levied enough tax to pay all the outstanding debt
of the county together with the amount of the contem-
plated expenditure, and the county road machinery would
cease to operate. The road fund differs radically in its
nature from the general fund which is a continuing debt-

paying fund. It should be presumed that the legislature intended to provide a system which in operation would work in harmony and not be violative of the constitution. To hold that the legislature intended to make the road fund of a county subject to the payment of warrants issued during any prior years would be to hold that the law-makers intended to provide a system which in operation would violate the constitution, and permit indebtedness incurred in one year, in excess of the amount permitted by the constitution, to be paid for in another. This would defeat the object in view.

In *Security Co.* v. *Baker County,* 33 Or. 338 (54 Pac. 174), at page 349 of 33 Or., at page 177 of 54 Pac., in the opinion, Mr. Justice WOLVERTON, speaking for the court, used the following language: "We do not mean to say that there might not be a special levy to meet special liabilities about to be incurred, or a setting aside and appropriation of particular or surplus funds to meet such intended liabilities which might not be obnoxious to the constitutional inhibition." Again, in *Eaton* v. *Mimnaugh,* 43 Or. 465, 476 (73 Pac. 754, 757), this court refers to the exception, within which we think the case at bar comes, in the following manner: "There are decisions holding that where, at the time a contract is made by a county, a fund is on hand and appropriated to its payment, or where one has been provided for, although not yet collected, or where an appropriation has been made of anticipated revenues, and the contract is payable out of such fund or revenue, it does not create an indebtedness within the meaning of the constitution. *Law* v. *People,* 87 Ill. 385; *Koppikus* v. *State Capitol Com'rs,* 16 Cal. 248; *People* v. *Pacheco,* 27 Cal. 175; *People* v. *May,* 9 Colo. 404 (12 Pac. 838) ; *Swanson* v. *City of Ottumwa,* 118 Iowa, 161 (91 N. W. 1048: 59 L. R. A. 620) ; *Beard* v. *City of Hopkinsville,* 95 Ky. 239 (24 S. W. 872: 23 L. R. A. 402: 44 Am. St. Rep. 222, 237, note)."

See, also, *Brix* v. *Clatsop County,* 46 Or. 223, 230 (80
Pac. 650). In *Com'rs of Highways* v. *Newell, et al.,* 80
Ill. 587, it was held that the road and bridge tax levied
for any given year is legally applicable in payment for
labor performed and expenditures made on the roads and
bridges during that fiscal year, and cannot rightfully be
applied to any other purpose, even to the payment of
prior indebtedness.

It will be noticed that Section 10, Article XI, of the
Constitution, by its terms inhibits the creation of certain
indebtedness. It contains no requirement that a county
shall not levy, collect, and expend revenues in the con-
struction of bridges and the improvement of county
roads. No restriction is implied therein which is ap-
plicable to a statute wherein is a scheme which contem-
plates and adheres to the principle of paying as you go.
Neither does this organic law make any express provision
for paying county indebtedness. The statute of Cali-
fornia provided that claims of counties are entitled to
payment in the order in which they are presented. The
constitution of that State provided "that no county, etc.,
shall incur any indebtedness or liability in any manner
or for any purpose exceeding in any year the income and
revenue provided for it in such year." In *Shaw* v. *Stat-
ler,* 74 Cal. 258 (15 Pac. 833), the court held that, in view
of the constiutional provisions, it would be presumed that
the legislature intended the funds of the counties to be
annual funds. The court makes use of the following
language: "It will be observed by this provision that
it refers in terms to the incurring of indebtedness and
not expressly to the payment. There is no express pro-
vision that the income and revenue of each year shall
be applied to the payment of the indebtedness of such
year but we think such is the necessary implication."
See, also, *Phillips* v. *Reed,* 107 Iowa, 331 (76 N. W. 850:
77 N. W. 1031). Therefore, the situation at the date of

the execution of the contract, June 6, 1912, was this: The condition of the general road fund of Jackson County for expenditure in the year 1912 was as follows:

Levy for road fund of Jan. 17, 1912, exclusive of the
    amount apportioned to the road districts.................$76,000.00

Expenditures for Roads and Bridges, 1912—

| | | | | |
|---|---|---|---|---:|
| Warrants issued in January | | | ....................$14,525.00 | |
| " | " | " | February ............... | 2,837.35 |
| " | " | " | March ................... | 2,245.35 |
| " | " | " | April ...................... | 1,271.46 |
| " | " | " | May ..................... | 1,754.34 |
| " | " | " | June ..................... | 8,007.74 |

No. 1—
  To complete Twohy Bros. Con. of Sept.
    1911 ...................................................... 10,690.00

No. 2—
  To complete bal. Twohy Bros. Con. of
    May-July, 1912 ..................................... 3,082.25

                                           $44,413.48   44,413.48

    Leaving an unexpended balance of......................  $31,586.52

—which should be in the general road fund for 1912. Any diversion from this fund for other purposes must be treated as a loan. The county court, under Section 6320, L. O. L., having provided for a fund sufficient to meet an $18,000 liability on the contract in question, and this fund being available for that purpose on June 6, 1912, the execution of the contract and the expenditure of that sum for the erection of a county bridge was not creating an indebtedness within the purview of the constitution. Therefore the county was not prohibited from expending that sum in the manner designed.

The decree of the lower court will therefore be modified so as to restrain the issuance or payment of any county warrants on account of the bridge contract in excess of $18,000 until such time as the City of Medford and the Pacific & Eastern Railway Company shall have paid into the treasury of Jackson County $16,000 as per agreement.        MODIFIED: REHEARING DENIED.