Argued March 16, reversed April 4, 1916.

## COLE *v.* SEASIDE.*

(156 Pac. 569.)

Pleading—Demurrer—Admission.

1. In an action to enjoin defendant city's improvement of a way and the enforcement of an assessment lien against the plaintiff's premises, the averment of the complaint that the way was a public county road or highway would be taken as true on demurrer.

Municipal Corporations—County Roads—Maintenance—Legislative Authority—"Street."

2. Although the laying out or opening of a rural road is under the jurisdiction of the County Court, or the laying out or maintenance of a city street is subject to the control of a common council, such highways subserving the easement of passage are within the control of the legislature, which has paramount authority over them, and may grant their supervision and control to some other governmental agency; so that a charter giving a city control of its "streets" does not authorize it to assume jurisdiction over a county road passing through its territory.

> [As to jurisdiction with respect to city streets as between city and county including city, see note in Ann. Cas. 1914A, 1051.]

Municipal Corporations—Street or County Road—Determination.

3. In determining whether a way in a city is a street or a county road, resort must be had to the intention of the legislature as gathered from the city charter, the general laws, and the whole course of legislation on the subject.

Municipal Corporations—Charter Powers—Construction.

4. The courts will adopt a strict, rather than a liberal, construction of the charter powers of municipal corporations.

Municipal Corporations—Powers—In General.

5. Municipal corporations can exercise no powers but such as are expressly conferred upon them by the act by which they are

---

*As to power of court to vacate highway, see note to 26 L. R. A. 826.                                                    REPORTER.

incorporated, or are necessary to carry into effect the powers so conferred or essential to the objects and purposes of the legislature.

### Municipal Corporations—Charter Provisions—Control of Streets—County Road.

6. Under Article XI, section 2, of the Constitution, providing that the legislature shall not enact, amend or repeal any charter giving the legal voters of every city, etc., power to enact their charter, subject to the Constitution and criminal laws, and in view of act of February 24, 1903 (Laws 1903, p. 262), providing a general scheme for the maintenance and control of county roads and highways in the state, declaring penalties for various violations thereof and in effect a criminal law of the state, a municipal corporation incorporated by Laws of 1899, page 953, and authorized (Section 14, subds. 17, 21) to regulate the use of the streets, roads, and highways and to provide for the grading, repair and cleaning of streets, alleys, etc., and under the amendments by Special Laws of 1901, page 795, and Special Laws of 1903, page 63, given the same powers, and by its initiative charter, adopted February 28, 1912, given the same powers and additional power to grade, improve, and repair the highways, streets, avenues and alleys, to divide the city into street improvement districts, and to defray the expenses of improvements by special assessments, without other surrender of the legislative authority over county roads and rural highways, could not by ordinance take jurisdiction over a county road passing through its territory.

### Highways—County Court—Vacation of County Road.

7. Under Section 6278, L. O. L., providing that all county roads shall be under the supervision of the County Court and that no county road shall be vacated in any county except by authority of the County Court, and Section 6279, as amended by act of February 25, 1913 (Laws 1913, p. 296), providing that all applications for vacating county roads shall be by petition to the County Court, the County Court, being of limited jurisdiction, could not relinquish its authority over a county road by its *ex parte* order on the exhibition of a certified copy of a city ordinance assuming jurisdiction over the county roads in the city.

### Highways—Legislative Control.

8. The legislature may intrust the management and control of its highways to any subordinate municipality, but such municipalities cannot of their own motion usurp the control over any public county road or highway.

### Municipal Corporations—Public Improvement—Assessment.

9. A city, whose ordinance assuming jurisdiction over a county road passing through it was void, had no power to impose a special assessment upon an adjoining owner's property to pay for its projected improvement, especially in view of the provision of its initiative charter limiting such assessments to the improvement of streets as distinguished from roads or highways.

## From Clatsop: James A. Eakin, Judge.

Department 1.  Statement by MR. JUSTICE BURNETT.

This is a suit by R. R. Cole against the City of Seaside, a municipal corporation, J. L. Berry, city auditor, and George E. Shaver, city marshal.

We learn from the complaint that the City of Seaside is a municipal corporation by virtue of certain acts of the legislative assembly hereinafter mentioned and a charter adopted by the voters under the initiative process on February 28, 1912. The other defendants are its auditor and marshal. For nearly 50 years there has been a public county road or highway running from Astoria through the territory now occupied by Seaside to the south line of Clatsop County, the same being now an integral part of the system of state roads known as the Pacific Highway. On October 27, 1913, the County Court divided that county into road districts including as part of district No. 2 the land on which Seaside is situated. Afterward, on November 19, 1913, the legal voters of the road district voted and levied a tax of five mills on the dollar on all the taxable property therein for the purpose of improving and repairing the county roads and highways within it, which action of the voters was duly submitted to and approved by the County Court on November 25, 1913. It is further averred that during the year 1913 the County Court duly made an order calling a special election to be held by the legal voters of the county to vote upon the question of issuing bonds in the sum of $400,000 to secure funds for the purpose of opening, constructing and repairing county roads in the county; one condition of the election being that $100,000 should be wholly utilized and expended on the county road leading from Astoria through the City of Seaside as mentioned above, and that the result was in favor of the issuance of the bonds. On

March 10, 1914, the city council of Seaside passed an ordinance approved by the mayor on that date, to the effect that:

The city "declares its full and complete jurisdiction over all streets, alleys, highways, avenues, lanes and ways within the corporate limits of the City of Seaside including all ways heretofore recognized as county roads and also including all bridges connecting the various highways within the corporate limits of the City of Seaside."

Subsequently, the city caused a certified copy of this ordinance to be filed with the County Court which duly considered the matter, and thereupon ordered that the county of Clatsop waive all jurisdiction over the streets and highways located in the City of Seaside, as described in the ordinance, and further that the waiver should not carry with it any funds or moneys which then or might afterward be in any road fund of any road district in which the City of Seaside is situated, but that all such funds should be used upon public roads and highways outside the city limits. Later, on the assumption that the city had entire control of the county road in question, the council renamed it Seventh Street, passed ordinances, one establishing a new grade thereof, and another providing for the pavement of the same, establishing curbs and drainage, and assessing the abutting property for the payment thereof, resulting in an impost upon the plaintiff's adjacent realty in the sum of $558.39. The plaintiff having refused to pay the sum, the city officers entered the claim in the official lien book of the municipality in which it is now docketed and constitutes a cloud on the plaintiff's title. He alleges that the city threatens to, and unless restrained by the court will, sell his holding in an effort to collect the money. The

prayer was to the effect that the court enter a decree declaring the thoroughfare to be a county road, that the city has no control or jurisdiction thereof for the purpose of making improvements thereon and assessing the cost to adjacent property owners, and that the city be forever restrained from enforcing the lien against the plaintiff's premises.

A general demurrer to this complaint was sustained by the Circuit Court, and, refusing to amend, the plaintiff appeals.                                   REVERSED.

For appellant there was a brief and an oral argument by *Mr. Edward E. Gray.*

For respondents there was a brief over the names of *Mr. George C. Fulton, Mr. Victor J. Miller, Mr. C. W. Huntington* and *Mr. Richard W. Montague,* with an oral argument by *Mr. Fulton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The complaint states, and on demurrer it must be taken as true, that the way in question is a public county road or highway.

2. In *Yocom* v. *City of Sheridan,* 68 Or. 232 (137 Pac. 222), this court, speaking by Mr. Justice MOORE, says:

"Whether the laying out or opening of a rural road is under the jurisdiction of a County Court, or the establishing or maintaining of a city street is subject to the control of a common council, such highways, so far as they subserve the easement of passage and its incidents, are free and at all times controlled by legislative authority. * * The streets of a city are not its private property, but they are for the use of the public, whose general agent is the legislative assembly,

which, in the absence of any constitutional restriction, has paramount authority over such highways, including bridges thereon, and may grant the supervision and control thereof to some other governmental agency."

Similar language is used in *Stoppenback* v. *Multnomah County,* 71 Or. 493 (142 Pac. 832). The same doctrine is enforced in the earlier cases of *Simon* v. *Northup,* 27 Or. 487 (40 Pac. 560, 30 L. R. A. 171), and *Brand* v. *Multnomah County,* 38 Or. 91 (60 Pac. 390, 62 Pac. 209, 84 Am. St. Rep. 772, 50 L. R. A. 389). The teaching of these cases is that authority over highways and the prerogative of delegating the control of the same are primarily in the legislative branch of the state government. A clear distinction exists between mere streets and roads or highways. This is pointed out in the exhaustive opinion of Mr. Justice LORD in *Heiple* v. *East Portland,* 13 Or. 97 (8 Pac. 907), so that the charter giving to the city control of its streets does not authorize it to assume jurisdiction over the county road which happens to pass through the territory in which the town is situated.

3. It is conceded by counsel for both parties that the rule in this state is to the effect that, in determining whether a passageway in a city is a street or a county road, resort must be had to the intention of the legislature as gathered from the city charter, the general laws, and the whole course of legislation on the subject. It is a matter of note that in all the reported cases hitherto decided in this state, where cities or towns have assumed jurisdiction over county roads passing through their boundaries, it has been by virtue of a charter expressly authorizing the same. For instance, in *Oliver* v. *Newberg,* 50 Or. 92 (91 Pac. 470), the legislative charter granted to that town gave it

"full power to lay out, open, work, change and control all the highways and roads within the corporate limits thereof"; exempted the inhabitants of the city and all property therein from the payment of road taxes of any description to Yamhill County; excepted the territory within the municipal limits from the jurisdiction of the County Court of that county; and vested full control of all roads and highways or parts thereof within the city limits in the town itself. A similar provision was found in the charter of East Portland under consideration in the case of Heiple against that borough, where it is said:

"The territory within the limits of the City of East Portland is hereby excepted out of the jurisdiction of the County Court of Multnomah County upon the following subjects, to wit, to divide the same or any part thereof into road districts, or to appoint supervisors of road districts for any part thereof, or to lay out, open, or work on the highways therein, and the inhabitants of that city shall be exempt from the payment of road taxes or the assessment of property within the said city for road work."

In *Huddleston* v. *Eugene*, 34 Or. 343 (55 Pac. 868, 43 L. R. A. 444, 1 Mun. Cor. Cas. 334), the legislative grant to the municipality authorized it to "open, establish and locate streets upon the roadbed of, and upon or across any county road or public highway within the corporate limits of the City of Eugene; and when so located or established, said county roads or public highways shall be and become public streets of said city and subject to jurisdiction and control of the council the same as other streets."

It was in pursuance of this that the court sustained an ordinance of the city establishing a street upon ground which had been used formerly as a county road. The general course of decision as pointed out in *Bow-*

*ers* v. *Neil,* 64 Or. 104, 109 (128 Pac. 433, 435), is to the effect that:

"Whether a county road becomes a street when included within the corporate limits of a city depends upon the intention of the legislature as gathered from the city charter, general laws and the whole course of legislation on the subject."

It is there said by Mr. Justice BEAN:

"A county government is an arm of the state; so also is a city, acting in its public or governmental capacity, and at the time of the enactment of the several charters referred to the legislature had power to impose upon a county the duty of building, maintaining, and repairing a bridge, on a county road within the limits of a city of the county. These municipal corporations are a part of the sovereign family, and it is appropriate that the state should direct and control their government in a manner not inconsistent with the Constitution."

4, 5. It is a rule of construction laid down in *Corvallis* v. *Carlile,* 10 Or. 139 (45 Am. Rep. 134), and expressly approved as late as *Rosa* v. *Bandon,* 71 Or. 510 (142 Pac. 339), that the courts will adopt a strict rather than a liberal construction of the charter powers of municipal corporations, and that "they can exercise no powers but such as are expressly conferred upon them by the act by which they are incorporated, or are necessary to carry into effect the powers thus conferred, or are essential to the manifest objects and purposes of the legislature."

6. With these principles in mind, we look into the several legislative charters of the municipal defendant. The original act of incorporation was that of February 17, 1899 (Laws 1899, p. 953). Therein (Section 14, subds. 17, 21) it was authorized "to regulate the use of the streets, roads and highways and public places

for foot-passengers, bicycles, animals and vehicles'';
and "to provide for the construction, cleaning and re-
pairing of sidewalks, crosswalks and gutters; and also
for grading, paving, macadamizing, graveling, plank-
ing, curbing or otherwise, in such manner as the coun-
cil may deem best, for improving, repairing and clean-
ing streets, alleys and walks in the town; and the same
shall be made and done at the expense of the town, and
no street assessment shall be levied or made for such
purpose against the adjoining or adjacent property.''
The same provisions are retained in the act of Feb-
ruary 27, 1901, amending certain parts of the Seaside
charter: Sp. Laws 1901, p. 795. The latest legislative
charter of Seaside is found in the act of December
23, 1903: Sp. Laws (Sp. Sess.) 1903, p. 63. The regu-
lation of the use of streets, roads and highways, and
public places for foot-passengers, bicycles, animals and
vehicles was authorized as before. In identical words
the council was empowered "to provide for the con-
struction, cleaning and repairing of sidewalks, cross-
walks and gutters, and also for grading, paving,
macadamizing, graveling, planking, curbing or improv-
ing, in such manner as the council may deem best for
improving, repairing, cleaning streets, alleys and walks
in the town." The only change made was that the
city could levy an assessment upon the property bene-
fited thereby not exceeding 50 per cent of the cost, the
town to pay the remainder. In all the legislation by
the state concerning the defendant municipality, no
word or provision anywhere intimates that state or
county control over the county roads passing through
the territorial limits of the town shall be surrendered.

In the initiative charter adopted by the legal voters
February 28, 1912, the same provisions regulating the
use of streets and providing for the construction, clean-

ing and repairing of sidewalks, crosswalks and gutters, and for grading and cleaning streets, alleys and walks as above quoted are promulgated. In addition thereto, Section 37, so far as necessary for the consideration of the issue in hand, reads thus:

"The council shall have the power and authority to grade, pave, plank, gravel, curb and otherwise improve and repair the highways, streets, avenues, lanes, and alleys of the city, and for the purpose of defraying the expenses thereof may divide the city into street improvement districts. The term paving shall be deemed to include the construction of crosswalks, gutters and curb. The power and authority to improve a street includes the power and authority to improve the sidewalks and pavements, and to determine and provide for everything convenient and necessary concerning such improvement. The fee of all the streets now within the city shall vest in the city in fee, and shall remain open as thoroughfares for the use of the public, and no street or portion thereof shall be vacated unless the same is necessary or extremely advisable, and then only after due notice by publication for ten days of the contemplated action, and an opportunity for interested property owners to be heard after such publication, as provided by ordinance. No part of the expense of improving any street, lane, or alley, by grading, paving, planking or graveling or otherwise or repairing the same except as hereinafter provided shall be paid from the general funds, but the whole of the expense of such improvements, including the street crossings, shall be defrayed by special assessment upon the lots, lands and premises included in a special assessment district to be constituted of the lands fronting upon the part of the street or alley so improved or proposed so to be, and of such other lands as in the opinion of the council may be benefited by the improvement. * * *"

Granting for the moment the postulate that the city has authority over the county road, it will be observed that all the provisions casting the cost of improve-

ments upon the adjacent property refers to the expense of improving any street, lane or alley, and does not allude to roads or highways. The same distinction is marked in other provisions of the initiative charter relating to assessments of abutting property. They all are applied to streets, and not to roads.

The larger question, however, is involved, as to whether the city is authorized to assume the control of a public county road. Bearing in mind that the original government of such things is vested in the state and its legislative authority, the question is whether a city may assume such a prerogative without the consent of the state.

As before stated, there is no state legislation anywhere surrendering to the city any dominion over the public road established in pursuance of state law. The only sanction for such assumption is found in the initiative charter of February 28, 1912. So far as applicable to the present contention, Section 2, Article XI, of the state Constitution, reads thus:

"Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon."

By an act approved February 24, 1903 (Laws 1903, p. 262), the legislative assembly provided a general and comprehensive scheme for the establishment, maintenance, and control of county roads and highways of the state, and declared penalties by fines and imprisonment, even to confinement in the penitentiary, for various violations of the act. Except for unimpor-

tant amendments, the law thus enacted remains to the present day. It is thus a criminal law of the state as declared in *Baxter* v. *State,* 49 Or. 353 (88 Pac. 677, 89 Pac. 369). In that case the court had under consideration what is known as the local option law designed for the control of the liquor traffic. In general, it provided a method whereby the electorate of any county or precinct therein could vote upon the question of whether the sale of intoxicating liquors should be forbidden, declared a procedure whereby the result might be attained, and established penalties for the violation of any of the provisions of the act. A portion of the town of Coquille, Oregon, was included in an election precinct lying partly within and partly without the city. The electors of the precinct voted in favor of the prohibition of the sale of liquor therein. The city endeavored to avoid the effect of the same by amending its charter relative to licensing persons engaged in the sale of intoxicants. It was decided by this court, however, that owing to the fact that the local option law contained penal provisions, it was a criminal law within the meaning of the constitutional provision quoted above, and hence was immune from any legislation by charter or otherwise on behalf of the city.

In the instant case, the highways of the state are involved. They are the legitimate subject of general legislation. As already pointed out, it has been uniformly held in previous decisions that they are under legislative control, and that, as stated in *East Portland* v. *Multnomah County,* 6 Or. 62, "the paramount and primary control of the highways of a state, including the streets in cities, is vested in the legislature." The logical deduction from the precedents hitherto established is that, until by its own action it surrenders

its authority over the roads and highways, the state's power is paramount over any of its subordinate arms of government. If state control is to be given up to any subservient municipality, the initiative must come from the legislative department of the state, and not from the lawmaking power of the locality. The creature cannot control the creator. Applying the doctrine of *Baxter* v. *State,* 49 Or. 353 (88 Pac. 677, 89 Pac. 369), we find the city assuming control over the county road running through its territory, and that, too, in defiance of a public criminal law of the state. As decided in that case, this cannot be done.

7, 8. Moreover, the County Court of Clatsop County, being of limited jurisdiction, must find in the statute its warrant for abdicating authority over the county road in question. It is declared in Section 6278, L. O. L.:

"All county roads shall be under the supervision of the County Court of the county wherein the said road is located; and no county road shall be hereafter established, nor shall any such road be altered or vacated in any county in the state, except by the authority of the County Court of the proper county; and each County Court within this state shall have the authority, and it shall be its duty, to supervise, control, and direct the working, laying out, opening, and keeping in repair of all county roads within its county, and to prescribe the methods and manner of working the same."

It is prescribed in Section 6279, L. O. L., as amended by the act of February 25, 1913 (Laws 1913, p. 296) that:

"All applications for laying out, altering or vacating county roads, or for the purpose of restoring monuments or straightening county roads, shall be by petition to the County Court of the proper county. * * *"

After a proper petition had been presented to it calling for a vacation of that part of the county road in question lying within the municipal limits of Seaside, the County Court might have proceeded regularly to the accomplishment of that purpose, but it could not do so by an *ex parte* order induced by the exhibition of a certified copy of the city ordinance already mentioned assuming jurisdiction over county roads in the town. As often decided, the legislative department of the state may intrust the management and control of its highways to any subordinate municipality; but, on the other hand, the latter cannot of its own motion usurp the control of any such ·state institution. The county roads and highways are peculiarly within the prerogative of the legislative department of the state, and authority over them cannot be wrested from the state without its consent. If a subordinate municipality can thus usurp power over a state prerogative in one instance, it may do it in any other. To sustain the action of the city in this case would be to say that any rural neighborhood containing 150 inhabitants may incorporate as a city or town under the provisions of Chapter 1, Title XXVI, L. O. L., plant itself across a county road, and, by an amendment to its charter, utterly defy the County Court, or, for that matter, the state itself, in an effort to improve the highway for the benefit of the general public. In addition to the excerpt from the opinion of Mr. Justice BEAN, in *Bowers* v. *Neil,* 64 Or. 104, 109 (128 Pac. 433, 435) the following authorities teach that municipal corporations are subordinate to state authority: *Straw* v. *Harris,* 54 Or. 424 (103 Pac. 777); *State* v. *Hearn,* 59 Or. 227 (115 Pac. 1066, 117 Pac. 412); *State ex rel.* v. *Port of Tillamook,* 62 Or. 332

(124 Pac. 637, Ann. Cas. 1914C, 483) ; *West Linn* v. *Tufts,* 75 Or. 304 (146 Pac. 986).

9. If grounded upon competent legislative authority, it might or might not be good policy for Seaside to ignore the road district levy, reject the $100,000 voted by the electors of the county for the improvement of this highway, and assume the entire responsibility of improving the same or allowing it to degenerate into a municipal mudhole; but none of such things are open to our consideration. The legislative branch of the government has never taken from the County Court of Clatsop County, nor given to that other subordinate polity, the City of Seaside, charge of the county road for which the state is primarily responsible. It is unwarranted for the city to take the initiative in an attempted transfer of sovereignty to itself. The city was clearly without power to assume jurisdiction as it attempted, in the absence of a legislative surrender of the state's prerogative, over the highway in question. No permission has been given to the town thus to act. For want of a proper petition, the County Court likewise was without jurisdiction to relinquish its authority over the same road. Without a legitimate basis for such action, the town has no right to impose the assessment upon the plaintiff's property to pay for the projected improvement. Especially is this the case in view of the further provision of the initiative charter limiting such an assessment to the improvement of streets as distinguished from roads or highways.

The decree of the Circuit Court is reversed and the cause remanded for further proceedings.

REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BENSON concur.