Argued October 20, 1922, reversed and remanded January 2, 1923.

# DENT v. OREGON CITY.

(211 Pac. 909.)

**Highways—Right to Use Highway Extends to Those Engaged in Carriage for Hire as Well as Individuals Pursuing Private Business.**

1. The rght to use public highways by the ordinary and usual means of transportation is common to all members of the public without distinction, and extends to those engaged in the business of carrying passengers or freight for hire by such means, as well as to individuals pursuing a strictly private business, subject to the state's power to impose reasonable and impartial regulations by statute, which power may be delegated by the legislature.

**Constitutional Law—Municipal Corporations—Streets are Public Highways of State Within Control of Legislature Which may Delegate Its Power.**

2. The streets of a municipality are public highways of the state, and the power of the legislature to supervise, regulate and control their use is paramount, but the legislature may delegate that power to a municipality in respect to public streets within its limits so long as such streets are not diverted to a use substantially different from that for which they were originally intended.

**Municipal Corporations—Charter Empowering City to Regulate Use of Streets Did not Authorize Regulations Prohibiting Use.**

3. Special Laws of 1903, pages 649, 650, giving power and authority to Oregon City in respect to the use of streets within its borders, empowered it to impose reasonable regulations on those using its streets, but those regulations cannot be carried to the extent of prohibition where the use made of the street is strictly for travel and passage by the usual and ordinary means, but, where the use made of the street results in an appropriation for private purposes beyond that involved in traveling, the city could prohibit that special use.

**Highways—Common Carrier has Equal Right With Citizens to Use Public Highways.**

4. A common carrier of passengers or freight by means of vehicles in ordinary use has an equal right with all other citizens to use public highways for purposes of traffic and passage.

**Municipal Corporations — Act Giving Public Service Commission Power to Regulate Transportation Companies on Public Highways Repeals Theretofore Granted Charter Powers of Municipalities That Conflict.**

5. Laws of 1921, page 707, Chapter 371, as amended by Laws of 1921 (Sp. Sess.), page 23, Chapter 8, authorizes use of motor vehicles for carriage of passengers or freight for hire on all public high-

---

3. Power of municipality over interurban vehicles used for hire, see note in **L. R. A.** 1918B, 891.

ways in the state, including those within municipalities, and provides that no city shall enforce any ordinance prohibiting in any manner inconsistent with the act the use of roads, streets or highways, and that license fees imposed by this act should be in lieu of all other taxes and licenses. Laws of 1921 (Sp. Sess.), page 35, Chapter 10, provides for supervision of transportation of persons and property, for compensation, over public highways, and requires common carriers so employed to furnish security, and places them under supervision and regulation of the Public Service Commission, and further, that the commission shall have the power to make regulations notwithstanding the provisions of any charter, ordinance or permit of any city. *Held,* that the acts repeal all charter powers theretofore granted, and ordinances passed pursuant thereto, which conflict with the general acts.

### Municipal Corporations—City Ordinance Requiring Franchise for Operation of Interurban Vehicle Invalid.

6. Ordinance of Oregon City of November 12, 1921, prohibiting the exercise of rights granted to an interurban carrier under Laws of 1921, page 707, Chapter 371, as amended by Laws of 1921 (Sp. Sess.), page 23, Chapter 8, and Laws of 1921 (Sp. Sess.), page 35, Chapter 10, being in conflict with the statutes, is invalid.

### Municipal Corporations — City may Enact Regulations Governing Unusual Use of Streets not Controlled by General Statutes.

7. Laws of 1921, page 707, Chapter 371, as amended by Laws of 1921 (Sp. Sess.), page 23, Chapter 8, and Laws of 1921 (Sp. Sess.), page 35, Chapter 10, recognize authority in cities, with charter powers to regulate the use of streets as prescribed by Special Laws of 1903, pages 649, 650, to regulate the use of its streets, based on special conditions of public travel in the municipality, and not controlled by the general statutes, and in the exercise of this retained power the city may regulate special or peculiar uses of the streets for purposes other than thoroughfares.

### Municipal Corporations—Regulation as to the Use of Streets That City is Authorized to Adopt must be by Ordinances Containing Uniform Requirements.

8. The regulations that Oregon City by its charter (Sp. Sess. 1903, pp. 649, 650) is authorized to adopt as to the use of its streets must be established by ordinance containing uniform requirements and operating generally and impartially on all members of the public similarly situated.

### Municipal Corporations — Ordinance Invalid as Leaving Use of Streets by Carriers to Unregulated Discretion of Council.

9. Ordinance of Oregon City of November 12, 1921, which did not prescribe any rule of action in relation to the use of streets by carriers, but indirectly authorized the council to negotiate terms individually with a carrier desiring to use the streets, and prohibited such use until an agreement had been reached between the council and each carrier and an ordinance passed evidencing such agreement, is invalid as leaving the whole matter to the unregulated discretion of the council.

From Clackamas: J. U. CAMPBELL, Judge.

In Banc.

For appellant there was a brief and oral argument by *Mr. Philip Hammond.*

For respondent there was a brief and oral arguments by *Mr. O. D. Eby* and *Mr. D. C. Latourette.*

McCOURT, J.—Plaintiff was convicted in the Recorder's Court of Oregon City upon a charge of violating an ordinance of that city; he removed the case to the Circuit Court by writ of review, where the action of the Recorder's Court was sustained and the writ dismissed. Plaintiff appeals from the judgment of the Circuit Court.

Plaintiff was engaged in operating a motor bus or stage as a common carrier of passengers between Portland and Salem and over a regular route along public highways.

At the time that plaintiff is alleged to have violated the ordinance of Oregon City, he had paid the license fees and otherwise complied with all the requirements imposed by the general laws of the State of Oregon upon a common carrier of passengers by motor bus or stage from one point to another in the State of Oregon.

The ordinance of Oregon City which plaintiff is charged with violating, was enacted by the Common Council of that municipality upon November 12, 1921. The ordinance defines the term "Interurban Public Utility Vehicle" as used therein, which definition embraces the vehicle operated by plaintiff, and then provides:

" * * it shall be unlawful for any person to operate any 'Interurban Public Utility Vehicle' on any street of the City of Oregon City without first obtaining a franchise therefor from the City of Oregon City, and no such franchise shall be given or granted except by Ordinance."

"Each such franchise shall be given and granted on such terms, provisions and conditions as may be determined by the ordinance giving or granting such franchise."

A penalty of fine or imprisonment, or both, is provided for violation of the ordinance.

It was the manifest design of the ordinance in question to deny to common carriers of passengers and freight by motor vehicles over the public highways between points outside of Oregon City, the use of the streets of that city in transporting such passengers or freight, without permission so to do granted to each carrier by special ordinance enacted by the common council of the municipality. Plaintiff attacks the validity of the ordinance.

He contends that the city is without power to prohibit the use of its streets by the common carriers defined in the ordinance; also that its authority in that respect is limited to regulatory ordinances which must contain permanent local provisions (not found in the ordinance in question), operating generally and impartially upon all common carriers who come within the scope of the particular enactment.

1. The right to use the public highways of the state by the ordinary and usual means of transportation is common to all members of the public without distinction, and extends to those engaged in the business of carrying passengers or freight for hire by such ordinary and usual means of transportation, as well as to individuals pursuing a strictly private busi-

ness, subject to the power of the state, by legislative enactment, to impose reasonable and impartial regulations upon such use, which power may be delegated by the legislature to the governing bodies of municipal corporations: 13 R. C. L. 251–255; *White Oak Coal Co.* v. *Manchester,* 109 Va. 749 (64 S. E. 944, 132 Am. St. Rep. 943); *Bogue* v. *Bennett,* 156 Ind. 478 (60 N. E. 143, 83 Am. St. Rep. 212); *Commonwealth* v. *Stodder,* 2 Cush. (Mass.) 562 (48 Am. Dec. 679); *Sumner County* v. *Interurban Transp. Co.,* 141 Tenn. 493 (213 S. W. 412, 5 A. L. R. 765); *Cicero Lumber Co.* v. *Cicero,* 176 Ill. 9 (51 N. E. 758, 68 Am. St. Rep. 155, 42 L. R. A. 696).

"A highway is a public way for the use of the public in general, for passage and traffic, without distinction. * * The restrictions upon its use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement, and the inconveniences must be submitted to when they are only such as are incident to a reasonable use under impartial regulations." *Macomber* v. *Nichols,* 34 Mich. 212 (22 Am. Rep. 522).

2. The streets of a municipality are public highways of the state, and the power of the legislature to supervise, regulate and control the use thereof is paramount, but the legislature may delegate that power of supervision, control and regulation to a municipality in respect to the public streets within its limits, or it may clothe some other governmental agency with that authority, so long as such streets are not diverted to some use substantially different from that for which they were originally intended: *Portland* v. *Multnomah County,* 6 Or. 62, 65; *Simon* v. *Northrup,* 27 Or. 487 (40 Pac. 560, 30 L. R. A. 171); *Brand* v. *Multnomah County,* 38 Or. 91 (60 Pac. 390, 62 Pac. 209, 84 Am. St. Rep. 772, 50 L. R. A. 389);

*Bowers* v. *Neil,* 64 Or. 104 (128 Pac. 433); *Yocom* v. *City of Sheridan,* 68 Or. 232 (137 Pac. 222); *Stoppenback* v. *Multnomah County,* 71 Or. 493 (142 Pac. 832); *Cole* v. *Seaside,* 80 Or. 73 (156 Pac. 569); *Patterson* v. *City of Ashland,* 95 Or. 233 (187 Pac. 593).

In the case of *Brand* v. *Multnomah County, supra,* Mr. Chief Justice WOLVERTON, speaking for the court, said:

"Primarily, the state has paramount control over all the highways within its borders, including public streets and highways within the confines of municipalities. Whatever authority a municipality may enjoy or possess, pertaining to its streets and highways, must be derived from the legislative assembly through its franchise or charter; and such a corporation acts, if at all, through a delegated power emanating from the initial source. (Citing cases.) Nor does the mere fact that the state has delegated certain powers to the municipality inhibit it from again resuming or exercising such powers."

3. By its charter, Oregon City was given power and authority in respect to the use of the streets within its borders, as follows:

"To regulate the use of streets, roads, and highways, and public places for foot passengers, animals, vehicles, cars, street railways, and locomotives; * * to prescribe the width of tires of all wheeled vehicles, and the weight to be carried thereby for the protection of the streets and highways; * * to control and limit traffic on the streets, avenues, and public places." Special Laws of Oregon, 1903, pp. 649, 650.

The foregoing charter provisions empowered Oregon City to impose reasonable regulations upon those using its streets, adopted in view of the local conditions and requirements respecting the streets, the travel and the public safety. Those regulations cannot be carried to the extent of prohibition where the

use made of the streets is strictly for travel and passage by the usual and ordinary means, but where the use made of the streets results in an occupancy or appropriation of the streets, or any portion thereof, for private purposes beyond that involved in traveling upon such streets by the usual and ordinary means, the municipality may not only regulate, but it may prohibit that special or peculiar use of its highways: 13 R. C. L. 252; *Thielke* v. *Albee,* 79 Or 48 (153 Pac. 793); *Cummins* v. *Jones,* 79 Or. 276, 155 Pac. 171; *Frick* v. *City of Gary* (Ind.), 135 N. E. 346; *Sumner County* v. *Transportation Co.,* 141 Tenn. 493 (213 S. W. 412, 5 A. L. R. 765, and note, p. 768); *Greene* v. *City of San Antonio* (Tex. Civ. App.), 178 S. W. 6; *Dickey* v. *Davis,* 76 W. Va. 576 (85 S. E. 781, L. R. A. 1915F, 840).

Some of the cases last cited contain statements to the effect that a municipality having power to regulate the use of its streets may entirely prohibit those engaged in the carriage of passengers or property for hire from using the streets within its boundaries for carrying on their business. That is true when the streets are used by such carriers as a stand for transacting business or soliciting patronage, stopping to let off or take on passengers, or any other use by which the streets, or a portion thereof, are occupied or appropriated to the exclusion of the remainder of the public, or are used in a manner that produces excessive wear upon the highways or endangers the public safety or which interferes with, or obstructs, the use of the streets as highways for the purposes of business or travel; but the statements are inaccurate as applied to the use of such streets by common carriers, strictly as thoroughfares.

4. A common carrier of passengers or freight by means of vehicles in ordinary use, has an equal right

with all other citizens to use the public highways for purposes of traffic and passage, subject to reasonable regulations, and the exercise of that right cannot be entirely prohibited without express legislative authority, and then only in exceptional circumstances.

In the case of *Jitney Bus Assn.* v. *City of Wilkes-Barre,* 256 Pa. 462 (100 Atl. 954), the court said:

"Regulation is not to be carried to the extent of prohibition. A jitney is an automobile, and by universal custom automobiles are permitted to use the streets of cities, as are other vehicles. The fact·that the owners of jitneys derive a profit from their operation makes no difference in their legal status. Much of the traffic upon the city streets is a matter of profit directly or indirectly to those engaged therein. The public highways are for the use of those engaged in commerce or industrial pursuits, no less than for pleasure cars. But if, from the usual manner of operating certain vehicles, the public safety is endangered, the right and duty of special regulation is clear."

But it is not necessary to decide whether power entirely to prohibit interurban carriers from using the city streets was conferred upon defendant by its charter.

The legislature, by statutes enacted subsequent to the grant of charter powers to defendant, has expressly authorized common carriers of property and passengers by motor vehicles, who do not operate exclusively within the limits of an incorporated city, to use the highways of the state in carrying on their business, and if defendant ever possessed the power wholly to prohibit such use, it has been deprived thereof.

5. The motor vehicle law (Chap. 371, Laws of 1921, and as amended by Chap. 8, Laws of 1921, Special Session), authorizes the use of motor vehicles op-

erated for the carriage of passengers or freight for hire upon all of the public highways of the state, including those within the boundaries of municipalities, and classifies such vehicles for the purposes of license fees or taxes imposed by the act upon those vehicles for the privilege of so using such public highways: *Northwestern Auto Co.* v. *Hurlburt* (Or.), 207 Pac. 161; *Camas Stage Co.* v. *Kozer* (Or.), 209 Pac. 95.

The act limits the power of municipalities over public highways as follows:

Sec. 2, subd. 25. "No city, town or other municipal or local authority within this state shall, * * pass, enforce or maintain any ordinance, rule or regulation, * * prohibiting or restricting in a manner inconsistent with the provisions of this act, the use of the roads, streets or highways of this state or any part thereof; * * ."

Sec. 26. "The registration and license fees imposed by this act upon motor vehicles, * * shall be in lieu of all other taxes and licenses, except municipal license fees under regulatory ordinances * * ."

The legislature, convened in special session in 1921, adopted a statute providing for the supervision and regulation of the transportation of persons and property for compensation over the public highways by motor vehicles, requiring all common carriers so employed to furnish prescribed security, and placing them under the supervision and regulation of the Public Service Commission of Oregon: Chap. 10, Laws of 1921, Special Session.

That statute applies to individuals or concerns "owning, controlling, operating or managing any motor vehicle * * used in the business of transportation of persons or property * * for compensation over any public highway in this state * * not op-

erating exclusively within the limits of an incorporated city or town * * ."

The term "public highway," as defined by the act, "means every public street, road, highway or way in this state * * ." The act imposes upon the Public Service Commission the duty to supervise and regulate all such common carriers in respect to all matters relating to the proper rendering of the public service in which they are engaged, and prohibits every such carrier from operating any motor vehicle on any public highway of this state "without having first obtained from the public service commission * * a certificate which shall set forth the special terms and conditions under which permission is granted to operate any of the vehicles" described in the act.

That act contains this further provision:

"The public service commission of Oregon * * shall have the power to make orders and prescribe rules and regulations affecting such transportation companies, notwithstanding the provisions of any charter, ordinance or permit of any incorporated city * * , and in case of conflict between any such order, rule or regulation of any such charter provision, ordinance or permit, the order or regulation of the public service commission of Oregon shall in each instance prevail, but cities and towns may enact and enforce reasonable regulatory ordinances including the imposing of regulatory licenses not destructive of the general purposes of this act."

The foregoing statutes repeal all charter powers theretofore granted, and ordinances passed pursuant thereto, which conflict with those general acts: *Rose* v. *Port of Portland,* 82 Or. 541 (162 Pac. 498); *Colby* v. *Medford,* 85 Or. 485, 534 (167 Pac. 487).

Under those statutes every common carrier of persons and property who has paid the required license

tax upon the motor vehicles employed by him, and has regularly obtained a certificate from the Public Service Commission permitting him to employ those vehicles as a common carrier, is expressly authorized to operate the same upon the public highways, including streets within the boundaries of cities, for purposes of travel and passage, notwithstanding the prohibitions of any charter provision or ordinance of a municipality

6. The ordinance in question prohibits the exercise of the specific rights granted by the statutes to interurban carriers. Being in conflict with the statutes, the ordinance is invalid.

7. The statutes mentioned recognize an authority in municipalities with charter powers like those possessed by defendant, to enact regulations governing the use of its streets, based upon the special conditions of public travel in the municipality, and not controlled by the general statutes; in the exercise of this retained power, defendant may regulate special or peculiar uses of its streets for purposes other than as thoroughfares.

However, the regulation that defendant is still empowered to impose, is not the subject of special franchise or contract, granted or made with each carrier desiring to use the city streets, after negotiations between the parties: *McCutcheon* v. *Wozencraft* (Tex. Civ. App.), 230 S. W. 733.

8. The regulations that defendant is authorized to adopt must be established by ordinances containing uniform requirements, reasonable in view of the local conditions, and operating generally and impartially upon all members of the public similarly situated: *Cicero Lumber Co.* v. *Cicero*, 176 Ill. 9 (51 N. E. 758, 68 Am. St. Rep. 155, 42 L. R. A. 696);

*Elkhart* v. *Murray,* 165 Ind. 304 (75 N. E. 593, 112 Am. St. Rep. 228, 6 Ann. Cas. 748, 1 L. R. A. (N. S.) 940); *State* v. *Superior Court,* 113 Wash. 296 (193 Pac. 845, 12 A. L. R. 1428)..

9. The ordinance in this case does not purport to prescribe any rule of action in relation to the use of streets by carriers, but indirectly authorizes the city council to negotiate terms individually with each carrier desiring to use the streets, and prohibits such use until an agreement has been reached between the council and each carrier, and an ordinance passed evidencing such agreement. The whole matter was left to the unregulated discretion of the common council, and on that account the ordinance is invalid: *Portland* v. *Traynor,* 94 Or. 418 (183 Pac. 933, 186 Pac. 54, 6 A. L. R. 1410).

For the reasons set forth in the foregoing discussion, the conviction of plaintiff was illegal, and the action of the Circuit Court confirming that conviction was erroneous. The judgment of the Circuit Court is therefore reversed, and the cause remanded, with directions to discharge plaintiff.

Reversed and Remanded With Directions.